## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMERGENCY CARE SERVICES OF PENNSYLVANIA, P.C., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC., *et al.*,<br><br>Defendants. | Civ. No. 19-1195<br>(Judge Rambo) |

### <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

The United Defendants[1] (collectively, "United") hereby submit this Motion to Dismiss Plaintiffs' Complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below and in United's Memorandum of Law, which will be filed in accordance with the timetable established by Local Rule 7.5, United's Motion should be granted, and this action should be dismissed.  In support of its Motion to Dismiss, United avers as follows:

---

[1] Defendants are UnitedHealth Group, Incorporated; United HealthCare Services, Inc.; UnitedHealthcare, Inc.; UnitedHealth Networks, Inc.; UnitedHealthcare Insurance Company; UnitedHealthcare of New England, Inc.; and UnitedHealthcare of Pennsylvania, Inc.

**Relevant Factual Background**

1.      Plaintiffs Emergency Care Services of Pennsylvania, P.C. and

Emergency Physician Associates of Pennsylvania, P.C. (collectively, "Plaintiffs")[2]

are for profit providers of emergency medical services that allege that they have

rendered medical care to members of health plans that United "provide[s], operate[s],

and/or administer[s] . . . in Pennsylvania."  (Doc. 1 ¶ 13.)

2.      Plaintiffs allege they engaged in extensive contract negotiations with

United to explore becoming part of United's contracted network of providers, but

ultimately rejected entering into a network contract because they considered United's

offered reimbursement rates to be too low.  (Doc. 1 ¶¶ 80-88, 92-95.)

3.      As out-of-network providers (Doc. 1 ¶ 40), Plaintiffs have chosen not to

enter into a contractual relationship or rate agreement with United, but have instead

elected to bill patients at whatever rates they wish while retaining the right to pursue

the patients for any portion of their billed charges that the patients' health plans do

not reimburse (*i.e.*, balance or "surprise" billing).

-----

[2] Plaintiffs are TeamHealth facilities.  *See, e.g.*, Team Health Holdings, Inc., 2011 Current Report (Form 8-K), Schedule 1-01D, EX-10.1 (June 29, 2011) (listing Plaintiffs as Related Professional Corporations); *Rea v. Hershey Co. 2005 Enhanced Mut. Separation Plan*, No. 1:cv-06-1920, 2007 WL 776882, at *6 (M.D. Pa. Mar. 12, 2007) (recognizing that a court considering a motion to dismiss may look to "public disclosure documents filed with the SEC") (citing *In Re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002)).

4.      Members who enroll in health plans insured or administered by United typically have a contractual right under plan terms to a specified level of benefits for emergency medical services.  (Doc. 1 ¶¶ 37, 158.)

5.      With respect to each claim at issue, United determined that the services provided were covered under the applicable plan and paid the claim, but at a rate less than Plaintiffs contend the plans should have paid.  (Doc. 1 ¶¶ 1, 56.)

6.      Plaintiffs' Complaint brings five counts, as follows:

- Count I:  Violation of RICO, 18 U.S.C. § 1962(c)
- Count II:  Violation of RICO conspiracy, 18 U.S.C. § 1962(d)
- Count III:  Breach of Implied-in-Fact Contract under Pennsylvania Law
- Count IV:  Unjust Enrichment under Pennsylvania Law
- Count V:  Declaratory Relief

7.      Plaintiffs' Complaint additionally includes a jury demand.

**<u>Relief Sought in This Motion</u>**

8.      Through this Motion, United seeks dismissal of Plaintiffs' Complaint for the reasons that follow.  ***First***, Plaintiffs purport to challenge an unidentified, mass-consolidated number of claims in a single complaint, but fail to provide even the most basic identifying information about the asserted claims.  ***Second***, Plaintiffs lack standing to bring their RICO and Pennsylvania state law claims.  ***Third***, with respect to their RICO claims, Plaintiffs fail to satisfy the heightened pleading requirements for allegations of fraud, and further fail to plead facts establishing a plausible basis for such claims.  ***Fourth***, Plaintiffs' state law claims relate to payments under plans

governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and all such claims are both expressly and completely preempted by ERISA.  Plaintiffs therefore also have no right to trial by jury on their state law claims.  ***Fifth***, Plaintiffs fail to allege sufficient facts to establish a plausible basis for any of their asserted state law causes of action.  ***Sixth***, Plaintiffs' declaratory judgment claim should be dismissed as duplicative of Plaintiffs' other claims.

9.      Alternatively, Plaintiffs should be required to plead a more definite statement pursuant to Rule 12(e).

## Legal Standard

10.     This Court should grant United's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) if, after accepting as true all well-pleaded factual allegations and all reasonable inferences that may be drawn therefrom in the light most favorable to Plaintiff, it determines that "no relief could be granted under any set of facts which could be proven."  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993).

## Plaintiffs' Complaint Fails Basic Pleading Standards

11.     The Complaint falls woefully short of Rules 8(a) and 10(b).

12.     Plaintiffs purport to challenge the reimbursement rate for an unidentified number of claims.  (*See* Doc. 1 ¶¶ 70, 72, 79.)  Yet Plaintiffs fail even to specify the number of claims they are challenging, and provide virtually no identifying information about their asserted claims.  Without plan, member, and claim

information, United cannot identify the specific claims at issue, and cannot plead the specific defenses it expects to raise with respect to the claims. *See Complete Foot & Ankle v. Cigna Health & Life Ins. Co.*, No. 17-cv-13742 (SDW)(LDW), 2018 WL 2234653, at *2 (D.N.J. May 16, 2018).

13.     Courts have rejected attempts by providers to consolidate hundreds of individualized benefits disputes into broadly constructed legal claims. *See Polk Med. Ctr., Inc. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 17-cv-3692-TWT, 2018 WL 624882, at *3 (N.D. Ga. Jan. 30, 2018) (dismissing complaint that merely provided a "vague reference to ERISA and non-ERISA plans in general" and "almost no information at all detailing the claims and health plans at issue"); *Ctr. for Reconstructive Breast Surgery, LLC. v. Blue Cross Blue Shield of La.*, No. 11-cv-806, 2013 WL 5519320, at *1 (E.D. La. Sept. 30, 2013) (directing that to comply with Rules 8 and 10, plaintiffs must identify, *inter alia*, "the specific insurance plan under which plaintiff is proceeding and whether it is an ERISA-governed plan or not").

**Plaintiffs Lack Standing**

14.     To the extent Plaintiffs seek to establish derivative standing to assert any of their claims as a result of patient assignments, they must be dismissed pursuant to Rule 12(b)(6). *See Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005) ("Civil RICO 'standing' is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction.").

15.     An assignment of a RICO claim must be express.  *See Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 112 (3d Cir. 1993).  Plaintiffs fail to establish an express assignment of RICO claims.

16.     Plaintiffs have likewise failed to plausibly plead a valid assignment with respect to their implied-in-fact contract and unjust enrichment claims.

17.     Section 1964(c) requires "that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).  Plaintiffs fail to show that United's alleged misrepresentations were the proximate cause of their injuries—a requirement to establish standing.  To the contrary, Plaintiffs cannot possibly establish the required causation because Plaintiffs acknowledge they are required to provide emergency medical services to "any individual who comes to the emergency department with an emergency medical condition, without inquiry into the individual's method of payment or insurance status."  (Doc. 1 ¶ 21.)  Because Plaintiffs are under a legal obligation to provide emergency medical services regardless of any representations by United, no representation United allegedly made can have proximately caused their asserted payment-related injuries.

### Plaintiffs' RICO Claims Sound in Fraud but Fail to Satisfy Rule 9(b)

18.     Plaintiffs' RICO claims fail to meet 9(b)'s standards by setting forth their fraud allegations with the requisite particularity.  "Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of

fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

19.     As just one example of Plaintiffs' endemic failure to meet 9(b)'s standards, Plaintiffs assert RICO claims against multiple United defendants, but have failed to "place the defendants on notice of the precise misconduct with which they are charged." *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 508–09 (D.N.J. 2000) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).  Plaintiffs cannot lump the defendants they have named together in this way; instead, they must distinguish the alleged conduct of particular defendants.

**Plaintiffs Fail to State a Claim for a RICO Violation**

20.     In Count I, Plaintiffs allege racketeering under RICO, 18 U.S.C. § 1962(c).

21.     In order to plead a RICO claim under § 1962(c), Plaintiffs must allege that they were injured "by reason of" a RICO violation, meaning that the alleged RICO violation must be the proximate cause of Plaintiffs' injury.  Plaintiffs fail to plead this required element for the reasons stated in ¶ 17 above.

22.     In order to plead mail and wire fraud, Plaintiffs must allege a scheme or artifice to defraud that involves "some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978).

23.     Plaintiffs' admission that they were required by federal law to provide the services in question without regard to the rates United-administered plans would pay (Doc. 1 ¶¶ 19-21) conclusively defeats any suggestion that United deceptively misrepresented to Plaintiffs the rates it would pay for the purpose of inducing Plaintiffs to, or as part of a fraudulent scheme to induce Plaintiffs to, provide medical services.  Plaintiffs admit they were required to provide the emergency medical services at issue without regard to any representations by United. *Id.*  Plaintiffs' allegations make no logical sense, and expose the fact that their Complaint is nothing more than an attempt to dress up garden variety benefits claims disputing the amount paid in the guise of RICO claims.

24.     Plaintiffs further admit United expressly notified them in advance that it would be implementing the very market-based reimbursement reductions about which Plaintiffs now complain (Doc. 1 ¶¶ 80-86), defeating any suggestion of concealment, fraud, or deception.

25.     Plaintiffs fail to plead an association-in-fact "enterprise" under section 1962(c), including "a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the

enterprise's purpose.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369–70

(3d Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).  Plaintiffs'

Complaint establishes nothing more than an ordinary commercial contractual

relationship between United and MultiPlan, Inc. relating to (among other things)

United's receipt of medical service pricing information through MultiPlan's Data

iSight tool, as part of a commercial services contract.  (Doc. 1 ¶¶ 89, 160-61); *see*

*Freedom Med., Inc. v. Gillespie*, No. 06-cv-3195, 2013 WL 2292023, at *20 (E.D.

Pa. May 23, 2013) (finding that plaintiff "cannot impute common membership in an

enterprise simply from the fact that the [alleged members] engaged in business

dealings").

26.     For all the same reasons, Plaintiffs also fail to plausibly allege that

United "conduct[ed] or participat[ed]" in the affairs of any RICO enterprise.  *See In*

*re Aetna UCR Litig.*, No. 07-cv-3541, 2015 WL 3970168, at *28 (D.N.J. June 30,

2015); *N.V.E., Inc. v. Palmeroni*, No. 06-cv-5455, 2015 WL 13649814, at *8 (D.N.J.

Feb. 23, 2015) (finding that allegations of "business entities operating in their own

self-interest" could not "possibly satisfy the conduct element").

### Plaintiffs Fail to State a Claim for RICO Conspiracy Under 18 U.S.C. § 1962(d)

27.     In Count II, Plaintiffs allege conspiracy under RICO, 18 U.S.C.

§ 1962(d), a crime to "conspire to violate" 18 U.S.C. § 1962(c).

28.    Plaintiffs' RICO conspiracy allegations are dependent on their claim that

United violated section 1962(c) "by conducting and participating, directly or

indirectly, in the conduct and affairs in the Enterprise through a pattern of

racketeering activity."  (Doc. 1 ¶ 187.)  Thus, Plaintiffs' RICO conspiracy claim

stands or falls with their section 1962(c) claim, and must fail for all the same reasons

described *supra* at ¶¶ 20-26.  *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153,

1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to

violate the other subsections of section 1962 necessarily must fail if the substantive

claims are themselves deficient.").

### Plaintiffs' State Law Claims Are Preempted By ERISA

29.    ERISA's purpose is to provide comprehensive and uniform regulation

over employee benefit plans.  *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133,

138 (1990).  ERISA contains two preemption clauses.

30.    First, § 502(a) allows a beneficiary or participant of an ERISA-regulated

plan to bring a suit "to recover benefits due to him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Second, § 514(a) is far-

reaching and explicitly "supersede(s) any and all State laws insofar as they . . . relate

to any employee benefit plan."  29 U.S.C. § 1144(a).

31.    Plaintiffs' state law claims are preempted under § 514(a) because they

depend upon the existence of a plan as a critical factor in establishing United's

alleged liability, and each claim seeks to require the plans to pay benefits at higher rates.

32.     Plaintiffs also specifically challenge United's administration of Plaintiffs' patients' health plans, putting Plaintiffs' state law claims squarely within § 514(a)'s expansive preemption reach.  (*See, e.g.*, Doc. 1 ¶¶ 54; 88; ¶ 89.)  Such claims are routinely dismissed as preempted.  *See Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*, No. 17-cv-08697, 2018 WL 2758221, at *5–6 (D.N.J. June 7, 2018).

33.     Plaintiffs' breach of implied contract claim is, in fact, nothing more than a direct challenge to United's administration of Plaintiffs' patients' health plans, and the rates at which those plans paid benefit claims.  (*See, e.g.*, Doc. 1 ¶¶ 191,197.)

34.     With respect to Plaintiffs' unjust enrichment claim, Plaintiffs allege, for example, that "in exchange for premiums and/or other compensation, Defendants assume a duty to provide coverage to their members for emergency services."  (Doc. 1 ¶ 214.)  But the plans, which define the extent of their "coverage," are the only reason such obligations could conceivably exist, and reference to the terms of health plans is therefore required to resolve those claims.  *See Palmeri v. Citadel Broad.*, No. 17-cv-00764, 2017 WL 3130282, at *3 (M.D. Pa. July 24, 2017) (court held claims for breach of contract and unjust enrichment were expressly preempted, "as they explicitly require reference to [the Plan] and what it covers.") (quotations omitted).

- 11 -

35.     All of Plaintiffs' state law claims seek relief for alleged denial or underpayment of benefits and, in addition, such claims require the interpretation of numerous health plans.  These claims pose the precise risk of inconsistent state regulation that § 514(a) is designed to prevent.

36.     Plaintiffs' state law claims must also be dismissed as completely preempted.   In *Pascack Valley*, the Third Circuit articulated that putative state law claims are subject to complete preemption if:  (i) the plaintiff could have brought its claims under ERISA; and (ii) no other independent legal duty supports the plaintiff's claim.  *Pascack Valley Hosp., Inc. v.  Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210-13 (2004)).  Both prongs of this preemption analysis test are easily satisfied.

37.     With respect to prong one, § 502(a) empowers "a participant or beneficiary" to bring a civil action "to recover benefits due to [it] under the terms of [its] plan." 29 U.S.C. § 1132(a)(1)(B).  However, a medical provider may obtain derivative standing to initiate suit under ERISA either through an assignment of benefits from the participant/patient, or by being designated by the participant/patient to act as an authorized representative.  *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).  Plaintiffs in fact specifically allege that their patients executed assignments, which assign to Plaintiffs "all rights to benefits under [their] insurance."  (Doc. 1 ¶¶ 26–27.)  Thus, prong one is satisfied.

38.     With respect to prong two, "[a] legal duty is 'independent' if it 'would exist whether or not an ERISA plan existed.'"  *Khan v. Guardian Life Ins. Co. of Am.*, No. 16-cv-253, 2016 WL 1574611, at *2 (D.N.J. Apr. 19, 2016) (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)).   The Third Circuit has held that claims related to the calculation and payment of a benefit due to a plan participant goes to the "essence of the function of an ERISA plan" and are, therefore, preempted.  *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 150 (3d Cir. 2007).  Here, no other independent legal duty exists because Plaintiffs' claims are based solely on United's alleged obligations under Plaintiffs' patients' plans.  And, every one of Plaintiffs' state law claims seeks to compel United to cause the plans it administers to reimburse at increased rates, despite ERISA not permitting a plaintiff to use state law causes of action to seek to require plans to pay higher benefit rates.  Thus, prong two is satisfied.

### Plaintiffs Fail to Allege the Elements of an Implied-in-Fact Contract

39.     "[A]n implied-in-fact contract is a true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been verbally expressed.  The agreement is inferred from the conduct of the parties."  *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987).

40.     Plaintiffs do not allege facts plausibly demonstrating that United intended to be bound to a contract with Plaintiffs governing the payment of their claims.  On the contrary, Plaintiffs allege that contract negotiations with United

occurred throughout late 2017 and 2018, but ultimately failed because Plaintiffs

would not agree to reasonable rates.  (*See* Doc. 1  ¶¶ 80-88, 92-95.)

41.    Plaintiffs' allegation that United caused the plans it administers to pay

some of their prior claims at various rates that Plaintiffs consider "the usual

customary and reasonable amount" (Doc. 1 ¶ 67), is insufficient to establish the

mutual assent necessary for an implied contract, much less what constitutes a

"reasonable and necessary" amount.

42.    Plaintiffs also do not allege facts that would establish the essential

elements of a valid contract, which include "an offer, acceptance, consideration,

and/or mutual agreement," and specifically, "time or manner of performance, and

price or consideration."  *Great N. Ins. Co. v. ADT Sec. Servs., Inc.*, 517 F. Supp. 2d

723, 736 (W.D. Pa. 2007).  Plaintiffs' implied-in-fact contract theory further fails for

indefiniteness, and for want of a meeting of the minds (Doc. 1 ¶ 202).

43.    Plaintiffs' claim is also not supported by any factual allegations that

United received consideration or enjoyed any bargained-for-benefit from Plaintiffs

for the medical services rendered to their patients.  In fact, the only beneficiary of

Plaintiffs' medical services is the patients.  (*See, e.g.*, Doc. 1 ¶ 1.)  Thus, any cause of

action for breach of implied contract fails as a matter of law.  *See Temple Univ.

Hosp., Inc. v. City of Philadelphia*, No. 1794, Mar. Term 2003, 2006 WL 51206, at

*3 (Phila. Com. Pl. Jan. 3, 2006) (dismissing claim for implied-in-fact contract

because "there was no exchange of consideration" where hospital "was legally bound

to provide emergency care services" under EMTALA and the Pennsylvania Health Care Facilities Act).

### Plaintiffs Fail to Allege the Elements of an Unjust Enrichment Claim

44.     Plaintiffs seeking recovery for unjust enrichment must prove (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. 2017). Plaintiffs fail to allege any of the elements of an unjust enrichment claim.

45.     Plaintiffs fail to allege any facts showing that the medical services rendered to their patients conferred a benefit on United.  Courts routinely dismiss unjust enrichment claims brought by providers against insurers because services benefit only ***patients***, and not the patients' insurer.  *See Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-cv-2775 (JBS/JS), 2012 WL 762498, at *8-9 (D.N.J. Mar. 6, 2012).

### Plaintiffs Are Not Entitled to Declaratory Relief or a Jury Trial

46.     Plaintiffs' declaratory judgment claim should be dismissed as duplicative of Plaintiffs' other claims.  Plaintiffs also have no right to trial by jury on their state law claims, which are preempted by ERISA.

**WHEREFORE**, for these reasons and the reasons set forth in United's

forthcoming Memorandum of Law, United's Motion to Dismiss should be granted

and this action should be dismissed in its entirety, with prejudice.

Respectfully submitted,

/s/ Karl S. Myers
Karl S. Myers
STRADLEY RONON
STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA  19103
(215) 564-8193
(215) 564-8120 facsimile

Counsel for defendants

Dated: September 27, 2019

*Of counsel:*

Gregory F. Jacob
Kevin D. Feder
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
gjacob@omm.com
kfeder@omm.com

Natasha S. Fedder
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899
(213) 430-6000
nfedder@omm.com

Amanda L. Genovese
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
(212) 326-2000
agenovese@omm.com