## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMERGENCY CARE SERVICES OF
PENNSYLVANIA, P.C., *et al.*,

        Plaintiffs,

        v.

UNITEDHEALTH GROUP, INC., *et al.*,

        Defendants.

Civ. No. 19-1195
(Judge Rambo)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Karl S. Myers
STRADLEY RONON
STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8193
(215) 564-8120 facsimile

Gregory F. Jacob (admitted *pro hac vice*)
Kevin D. Feder (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
gjacob@omm.com
kfeder@omm.com

Natasha S. Fedder (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899
(213) 430-6000
nfedder@omm.com

Amanda L. Genovese (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
(212) 326-2000
agenovese@omm.com

Counsel for defendants

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION, PROCEDURAL HISTORY, AND STATEMENT OF FACTS ............................................................................................. 1

II.  STATEMENT OF QUESTIONS INVOLVED ..................................... 2

III. PLAINTIFFS' ASSERTION OF AN UNSPECIFIED NUMBER OF CLAIMS WITHOUT ANY CLAIM-SPECIFIC IDENTIFYING INFORMATION FAILS BASIC PLEADING STANDARDS ........................ 3

IV.  PLAINTIFFS FAIL TO STATE A RICO CLAIM ............................................. 5

    A.   Plaintiffs Have Failed to Plead Proximate Cause as Required by RICO ............................................................................................. 5

    B.   Plaintiffs Fail to Plead Predicate Acts of RICO Fraud with the Particularity Required by Rule 9(b) .......................................... 7

    C.   Plaintiffs Fail to Plead the Elements of a Claim Under § 1962(c) ........... 9

        1.   Plaintiffs Fail to Allege Plausible Facts Showing a Common Purpose Between Alleged Enterprise Members ........................... 9

        2.   Plaintiffs Fail to Plausibly Allege Facts Showing that United "Conducted the Affairs" of a RICO Enterprise ............... 10

        3.   Plaintiffs Cannot Plausibly Allege That the Alleged Representations Were "Calculated to Deceive." ........................ 11

    D.   Plaintiffs Fail to State a Claim for RICO Conspiracy Under 18 U.S.C. § 1962(d) ................................................................................... 12

V.   PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY ERISA ...... 13

    A.   The Complaint Places Plan Benefit Provisions, not Provider Contracts, at Issue ................................................................................... 14

    B.   Plaintiffs' Claims are Conflict Preempted ............................................. 15

    C.   Plaintiffs' Claims Are Completely Preempted ...................................... 18

    D.   Plaintiffs' Claims Cannot Escape Preemption Through Artful Pleading ................................................................................................... 19

VI.  PLAINTIFFS HAVE FAILED TO PLEAD ANY PLAUSIBLE STATE LAW CLAIM FOR RELIEF AGAINST DEFENDANTS ............................. 20

    A.   Plaintiffs Fail to Allege the Elements of an Implied-in-Fact Contract ................................................................................................... 20

**TABLE OF CONTENTS**
**(continued)**

**Page**

B.    Plaintiffs Fail to Allege the Elements of an Unjust Enrichment Claim ...................................................................................21

VII.   PLAINTIFFS' DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED ......................................................................................23

VIII.  CONCLUSION................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*,
  2018 WL 2758221 (D.N.J. June 7, 2018) .................................................................16

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004) ..............................................................................................18

*Air Evac EMS Inc. v. USAble Mut. Ins. Co.*,
  2018 WL 2422314 (E.D. Ark. May 29, 2018) .........................................................23

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ...............................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................5

*Boyle v. United States*,
  556 U.S. 938 (2009) ................................................................................................9

*Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*,
  2012 WL 762498 (D.N.J. Mar. 6, 2012) .................................................................22

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
  140 F.3d 494 (3d Cir. 1998) ..................................................................................12

*Christ Hosp. v. Local 272 Welfare Fund*,
  2012 WL 12904677 (D.N.J. Apr. 16, 2012) ...........................................................16

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
  2017 WL 3623832 (D.N.J. Mar. 31, 2017) .............................................................17

*Cohen v. Horizon Blue Cross Blue Shield of New Jersey*,
  2017 WL 685101 (D.N.J. Feb. 21, 2017) ...............................................................19

*Complete Foot & Ankle v. Cigna Health & Life Ins. Co.*,
  2018 WL 2234653 (D.N.J. May 16, 2018) ................................................................4

*Ctr. for Reconstructive Breast Surgery, LLC. v. Blue Cross Blue Shield of La.*,
  2013 WL 5519320 (E.D. La. Sept. 30, 2013) ...........................................................4

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Encompass Office Sols., Inc. v. Ingenix, Inc.*,
  775 F. Supp. 2d 938 (E.D. Tex. 2011) ...................................................22

*Freedom Med., Inc. v. Gillespie*,
  2013 WL 2292023 (E.D. Pa. May 23, 2013) ..........................................10

*Great N. Ins. Co. v. ADT Sec. Servs., Inc.*,
  517 F. Supp. 2d 723 (W.D. Pa. 2007) .....................................................20

*Hartman v. Wilkes-Barre Gen. Hosp.*,
  237 F. Supp. 2d 552 (M.D. Pa. 2002) .....................................................15

*Hemi Grp., LLC v. City of N.Y., N.Y.*,
  559 U.S. 1 (2010) .......................................................................................5

*Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*,
  2013 WL 3810617 (S.D. Fla. July 22, 2013) ..........................................23

*In re Aetna UCR Litig.*,
  2015 WL 3970168 (D.N.J. June 30, 2015) .........................................10, 11

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
  804 F.3d 633 (3d Cir. 2015) .......................................................................6

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) .......................................................................9

*In re Lincoln Nat'l COI Litig.*,
  269 F. Supp. 3d 622 (E.D. Pa. 2017) ......................................................23

*In re Penn Cent. Transp. Co.*,
  831 F.2d 1221 (3d Cir. 1987) ...................................................................20

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002) .......................................................................7

*In re Supreme Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) .......................................................................8

*Ingersoll-Rand Co. v. McClendon*,
  498 U.S. 133 (1990) .............................................................................13, 15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Khan v. Guardian Life Ins. Co. of Am.*,
  2016 WL 1574611 (D.N.J. Apr. 19, 2016) ...............................................19

*Kollman v. Hewitt Assocs., LLC*,
  487 F.3d 139 (3d Cir. 2007)...................................................................19

*Levine v. United Healthcare Corp.*,
  402 F.3d 156 (3d Cir. 2005)...................................................................19

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993)....................................................................13

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000)....................................................................6

*Mark Hershey Farms, Inc. v. Robinson*,
  171 A.3d 810 (Pa. Super. 2017)............................................................21

*Martellacci v. Guardian Life Ins. Co. of Am.*,
  2009 WL 440289 (E.D. Pa. Feb. 20, 2009) ...........................................17

*MC1 Healthcare, Inc. v. United Health Grp., Inc.*,
  2019 WL 2015949 (D. Conn. May 7, 2019), *on reconsideration in part*, 2019 WL
  3202965 (D. Conn. July 16, 2019).........................................................22

*McCall v. Metropolitan Life Ins. Co.*,
  956 F. Supp. 1172 (D.N.J. 1996) ...........................................................15

*Menkes v. Prudential Ins. Co. of Am.*,
  762 F.3d 285 (3d Cir. 2014)...................................................................17

*Metro. Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987) .................................................................................20

*Montvale Surgical Ctr. v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
  2012 WL 6554404 (D.N.J. Dec. 14, 2012).............................................14

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
  801 F.3d 369 (3d Cir. 2015)...................................................................19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*,
   2011 WL 4737067 (D.N.J. June 30, 2011), *R. & R. adopted*, 2011 WL 4737063
   (D.N.J. Oct. 6, 2011) ........................................................................................15, 18

*N. Jersey Brain & Spine Ctr. v. Connecticut Gen. Life Ins. Co.*,
   2011 WL 4737063 (D.N.J. Oct. 6, 2011) ........................................................17

*Palmeri v. Citadel Broad.*,
   2017 WL 3130282 (M.D. Pa. July 24, 2017) ...................................................16

*Pane v. RCA Corp.*,
   868 F.2d 631 (3d Cir. 1989) .............................................................................17

*Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*,
   388 F.3d 393 (3d Cir. 2004) .............................................................................18

*Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*,
   2015 WL 2198470 (S.D. Fla. May 11, 2015) ...................................................22

*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987) ......................................................................................13, 20

*Polk Med. Ctr., Inc. v. Blue Cross & Blue Shield of Ga., Inc.*,
   2018 WL 624882 (N.D. Ga. Jan. 30, 2018) .......................................................5

*Pryzbowski v. U.S. Healthcare, Inc.*,
   245 F.3d 266 (3d Cir. 2001) .............................................................................15

*Railway Labor Execs. Ass'n v. Pittsburg & Lake Erie R.R. Co.*,
   858 F.2d 936 (3d Cir. 1988) .............................................................................18

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ..........................................................................................10

*Riordan v. Optum & Oxford Health Plan*,
   2018 WL 3105426 (D.N.J. June 25, 2018) .......................................................16

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
   742 F.2d 786 (3d Cir. 1984) ...............................................................................8

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) ............................................................................................15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*State Farm Mut. Auto. Ins. Co. v. Ficchi*,
2011 WL 2313203 (E.D. Pa. June 13, 2011) ............................................................9

*Temple Univ. Children's Med. Ctr. v. Grp. Health, Inc.*,
413 F.Supp.2d 530 (E.D. Pa. 2006) .......................................................................17

*Temple Univ. Hosp., Inc. v. City of Phila.*,
2006 WL 51206 (Pa. Ct. C.P. Phila. Cty. Jan. 3, 2006).........................................21

*Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*,
832 A.2d 501 (Pa. Super. Ct. 2003) .......................................................................23

*Tex. Spine & Joint Hosp., Ltd. v. Blue Cross & Blue Shield of Tex., a Div. of Health
Care Serv. Corp.*,
2015 WL 13649419 (E.D. Tex. May 28, 2015).......................................................22

*Travelers Indem. Co. v. Losco Grp., Inc.*,
150 F. Supp. 2d 556 (S.D.N.Y. 2001).....................................................................22

*United States v. Pearlstein*,
576 F.2d 531 (3d Cir. 1978)....................................................................................11

*Walter v. Palisades Collection, LLC*,
480 F. Supp. 2d 797 (E.D. Pa. 2007) ......................................................................12

*Wood v. Prudential Ins. Co. of Am.*,
207 F.3d 674 (3d Cir. 2000)...............................................................................19, 20

*Zapiach v. Empire Blue Cross Blue Shield*,
2018 WL 1838017 (D.N.J. Apr. 17, 2018) .............................................................16

## Statutes

18 U.S.C. § 1964(c) ......................................................................................................5

29 U.S.C. § 1132(a)(1)(B) ....................................................................................13, 18

29 U.S.C. § 1144(a) .............................................................................................13, 15

## Other Authorities

120 Cong. Rec. 29,197 (1974) ...................................................................................17

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**Rules**

Federal Rules of Civil Procedure 10 ...................................................................4

Federal Rules of Civil Procedure 10(b) .............................................................4

Federal Rules of Civil Procedure 12(b)(6)..........................................................5

Federal Rules of Civil Procedure 12(e) .............................................................5

Federal Rules of Civil Procedure 8 ...................................................................4

Federal Rules of Civil Procedure 8(a) ...............................................................4

Federal Rules of Civil Procedure 9(b) .............................................................4, 5, 7, 9

## I.   INTRODUCTION, PROCEDURAL HISTORY, AND STATEMENT OF FACTS

Plaintiffs Emergency Care Services of Pennsylvania, P.C. and Emergency Physician Associates of Pennsylvania, P.C. (collectively, "Plaintiffs") filed their Complaint on July 11, 2019.  The United Defendants[1] (collectively, "United") filed a Motion to Dismiss (Doc. 22) on September 27, 2019, and now file this brief in support.

Plaintiffs are *for-profit* providers of emergency medical services that allege they rendered medical care to members of health plans that United "provide[s], operate[s], and/or administer[s] . . . in Pennsylvania." (Doc. 1 ¶¶ 13, 42.)  For all of the claims at issue, Plaintiffs acknowledge that the relevant plans paid their medical claims, but contend they should have paid more.  (Doc. 1 ¶ 41.)  Plaintiffs admit they have no contractual rate agreement with United or the plans, because the Plaintiffs would not agree on rates.  (Doc. 1 ¶¶ 40, 42, 80-88, 92-95.)  Plaintiffs assert, however, that they have obtained plan benefit assignments from their patients assigning them "all rights to benefits under [the patients'] insurance." (Doc. 1 ¶ 27.)  Plaintiffs allege that the relevant plans contain provisions describing the amount of benefits they will pay, stating that the plans promise to pay "reasonable,"

---

[1] Defendants are UnitedHealth Group, Incorporated; United HealthCare Services, Inc.; UnitedHealthcare, Inc.; UnitedHealth Networks, Inc.; UnitedHealthcare Insurance Company; UnitedHealthcare of New England, Inc.; and UnitedHealthcare of Pennsylvania, Inc.

"usual," or "customary" rates.  (Doc. 1 ¶ 67-69.)  Every one of Plaintiffs' claims

contends that the payments Plaintiffs received from the plans failed to meet this

standard.  (Doc. 1 ¶¶ 179, 187, 196, 208, 221.)

 Rather than assert their plan underpayment claims by filing claims for benefits

under the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiffs

instead attempt to dress up their claims in the guise of federal claims under the

Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c)-

(d), and state law claims for unjust enrichment and breach of an implied-in-fact

contract.  So framed, the Complaint must be dismissed in its entirety.

## II.    STATEMENT OF QUESTIONS INVOLVED

1.     Whether the entire Complaint must be dismissed because Plaintiffs

purport to challenge thousands of claim payments in a single complaint, but fail to

provide even the most basic identifying information about the asserted claims.

*Suggested Answer:  Yes.*

2.     Whether Counts I and II for violations of RICO, 18 U.S.C. § 1962(c)-

(d), should be dismissed with prejudice because Plaintiffs' Complaint fails to plead

facts establishing the required elements of their RICO claims, and further fails to

satisfy the heightened pleading requirements for allegations of fraud.

*Suggested Answer:  Yes.*

3.     Whether Counts III and IV for breach of implied-in-fact contract and

unjust enrichment under Pennsylvania Law should be dismissed with prejudice

because they are expressly and completely preempted by ERISA, and further because

Plaintiffs' Complaint fails to plead facts establishing the required elements of their

state law claims.

    *Suggested Answer:  Yes.*

    4.    Whether Count V for declaratory relief should be dismissed with

prejudice because it is duplicative of Plaintiffs' other claims.

    *Suggested Answer:  Yes.*

## III.   PLAINTIFFS' ASSERTION OF AN UNSPECIFIED NUMBER OF CLAIMS WITHOUT ANY CLAIM-SPECIFIC IDENTIFYING INFORMATION FAILS BASIC PLEADING STANDARDS

    Plaintiffs challenge the reimbursement rates paid on an unspecified, but

evidently large, number of health benefit reimbursement claims.  (See Doc. 1 ¶¶ 70,

72, 79.)  Yet Plaintiffs provide virtually no identifying information about the

challenged claims.  For just ten cherry-picked claims, the Complaint provides a date

of service, procedure code, billed amount, and an amount paid—but no other

information, including the plan at issue.[2]  All information concerning the remaining

thousands of claims is entirely omitted.

_____

    [2] (Doc. 1 ¶¶ 73-75 (Members ZA, ZB), ¶ 142(b)-(c) (Members AB, AC), ¶ 143(b)-(c) (Members AE, AF), 157 (Member PA), 169(a)-(c) (Members BB, BC, BD).) The Complaint admits the claims of Members AA and AD were paid at reasonable rates.  (Doc. 1 ¶ 142(a), ¶ 143(a) (Members AA, AD).).  It also references a handful of claims submitted by other providers in other states.  (Doc. 1 ¶ 157 (Members WY, NH, OK, KS, NM, CA, PA).).

This falls woefully short of Plaintiffs' pleading obligations under Rules 8(a) and 10(b).[3]  Without plan, member, and claim information, United cannot identify the specific claims at issue, and cannot plead the specific defenses it expects to raise with respect to the claims.  *See Complete Foot & Ankle v. Cigna Health & Life Ins. Co.*, 2018 WL 2234653, at *2 (D.N.J. May 16, 2018) (granting motion to dismiss health care provider underpayment claims where "Plaintiff's pleading does not identify the dates upon which services were rendered, the nature of the services provided, which patient received which services, the amounts charged for each patient, the terms of the assignments of benefits executed by the patients, or the terms of the Plans under which Plaintiff seeks payment.  Without this information, the Complaint contains little more than an assertion that Plaintiff is owed more than it was paid for the services it provided.  This is insufficient under Rule 8.") (footnote omitted) (collecting cases).  For that reason, the complaint should be dismissed.  *See Ctr. for Reconstructive Breast Surgery, LLC. v. Blue Cross Blue Shield of La.*, 2013 WL 5519320, at *1 (E.D. La. Sept. 30, 2013) (to comply with Rules 8 and 10, plaintiffs must identify, *inter alia*, "the specific insurance plan under which plaintiff is proceeding and whether it is an ERISA-governed plan or not"); *Polk Med. Ctr., Inc. v. Blue Cross & Blue Shield of Ga., Inc.*, 2018 WL 624882, at *3 (N.D. Ga. Jan. 30,

---

[3] As set forth below, the claims at issue that sound in fraud are subject to the even more rigorous pleading requirements of Rule 9(b).

2018) (dismissing complaint that merely provided a "vague reference to ERISA and non-ERISA plans in general" and "almost no information at all detailing the claims and health plans at issue").  Alternatively, Plaintiffs should be required to plead a more definite statement under Rule 12(e).

## IV.   PLAINTIFFS FAIL TO STATE A RICO CLAIM

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level" and must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  In particular, a complaint must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. With respect to fraud-based RICO allegations, Rule 9(b) "imposes a heightened pleading requirement of factual particularity." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

### A.   Plaintiffs Have Failed to Plead Proximate Cause as Required by RICO.

A RICO Complaint must plead facts sufficient to establish that the Plaintiffs were injured "by reason of" a RICO predicate offense, *see* 18 U.S.C. § 1964(c), meaning that the asserted predicate offense proximately caused the Plaintiffs' injuries. *Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 17–18 (2010) ("This Court has interpreted RICO broadly, consistent with its terms, but we have also held that its

reach is limited by the 'requirement of a direct causal connection' between the predicate wrong and the harm."); *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (in order to have "standing under RICO," plaintiffs must make a "threshold showing[] . . . that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962"); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 642 (3d Cir. 2015). In their Complaint, Plaintiffs assert Defendants committed predicate offenses of wire and mail fraud. (Doc. 1 ¶ 99.) Specifically, Plaintiffs contend that the alleged RICO Enterprise used interstate wires and mails to make false representations to Plaintiffs and other providers concerning the transparency and accuracy of the Data iSight service that United used to assist it in determining plan payment rates. (Doc. 1 ¶¶ 162-63.)

These allegations do not establish, and cannot establish, that any of the purportedly false representations proximately caused Plaintiffs' injuries. The Complaint acknowledges that Plaintiffs are required to provide emergency medical services to "any individual who comes to the emergency department with an emergency medical condition, without inquiry into the individual's method of payment or insurance status." (Doc. 1 ¶ 21.) Because Plaintiffs are legally obligated to—and admittedly do—provide services to patients "regardless of insurance status" and "without inquiry into the individual's method of payment," (Doc. 1 ¶¶ 19, 21), any representation made to Plaintiffs concerning United's payment rates could not have affected their provision of services. There is no causal connection between the

alleged representations and Plaintiffs' alleged injury because the alleged representations could not have caused Plaintiffs to do anything that they were not already legally obligated to do.

The Complaint also contains an additional, related causation problem for Plaintiffs.  Although the Complaint alleges predicate RICO acts based on fraud, misrepresentation, and concealment, Plaintiffs admit that United provided them advance notice that their out-of-network payment rates were expected to drop. (Doc. 1 ¶¶ 82, 85-86.)  This frank disclosure—assertedly made by United on at least three separate occasions—breaks any conceivable causal chain connecting Plaintiffs' purported underpayment injuries to any alleged misrepresentations concerning how the fully disclosed rate reductions would be calculated.

### B.       **Plaintiffs Fail to Plead Predicate Acts of RICO Fraud with the Particularity Required by Rule 9(b).**

Plaintiffs' RICO claims are founded on predicate acts of mail and wire fraud, but they fail to allege the asserted acts of fraud with the particularity required by Rule 9(b).  "Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 216.  At a minimum, a plaintiff must support his allegations of fraud with all the essential factual background that would accompany "'the first paragraph of any newspaper story'—that is, the 'who what, when, where and how' of the events at issue." *In re Supreme Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir.

2006) (quotation omitted).  This heightened pleading requirement is intended "to

place the defendants on notice of the *precise misconduct* with which they are

charged."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791

(3d Cir. 1984) (emphasis added).

The Complaint fails to meet this standard.  To be sure, the Complaint recounts

in some detail various representations that Data iSight—which is not a named

defendant—allegedly made on its website.  (Doc. 1 ¶¶ 111-157.)  But Data iSight is a

service used by many different payers and health plans, not just United, (*see* Doc. 1

¶ 89 n.3), and the Complaint fails to attribute Data iSight's asserted

misrepresentations to any specific United Defendant.  The Complaint occasionally

lumps the United Defendants together in vague and conclusory allegations that the

"Defendants" are "working" or "conspir[ing]" with Data iSight to "manipulate

reimbursement rates" and to "conceal their scheme," (Doc. 1 ¶¶ 90, 98, 105-106), but

the Complaint is devoid of the required "who, what, when, where, and how"

concerning the United Defendants' supposed role in the alleged conspiracy.[4]  In the

absence of the required particularity, Plaintiffs' fraud-based RICO claims must be

dismissed.  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290-93 (11th Cir.

2010) (affirming dismissal of similar RICO claims brought by providers against an

---

[4] Indeed, the only representations the Complaint attributes to specific United
personnel or entities are frank disclosures of the impact that United's "new benchmark
pricing program" was expected to have on payment rates.  (Doc. 1 ¶¶ 80-94.)

insurer alleging a fraudulent scheme to reduce plan payment rates through various methodologies); *State Farm Mut. Auto. Ins. Co. v. Ficchi*, 2011 WL 2313203, at *7 (E.D. Pa. June 13, 2011) (plaintiffs failed to satisfy Rule 9(b) because the complaint did not "identify the actor who made the material misrepresentation at issue, but instead list[ed] groups of actors or medical offices associated with a claim number and assert[ed] that those people 'and/or' entities made a misrepresentation.").

**C.   Plaintiffs Fail to Plead the Elements of a Claim Under § 1962(c).**

To plead a RICO claim under § 1962(c), "the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 362 (3d Cir. 2010) (quotation omitted). Plaintiffs fail to plead the required elements of conduct or enterprise, and fail to plead the predicate acts of mail or wire fraud necessary to establish the required racketeering activity.

> *1.   Plaintiffs Fail to Allege Plausible Facts Showing a Common Purpose Between Alleged Enterprise Members.*

To plead an association-in-fact "enterprise," Plaintiffs must plausibly allege "a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 369–70 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).  Plaintiffs allege that United and Data iSight were members of an association-in-fact enterprise, and had a "common and continuing

purpose." (Doc. 1 ¶ 177, 179.) The pleaded facts, however, establish nothing more than an ordinary commercial contractual relationship between United and MultiPlan, Inc., pursuant to which United received pricing information through MultiPlan's Data iSight tool. (Doc. 1 ¶¶ 89, 160-61.) An ordinary commercial contract of this nature does not establish an actionable RICO "enterprise." *See Freedom Med., Inc. v. Gillespie*, 2013 WL 2292023, at *20 (E.D. Pa. May 23, 2013) (plaintiff "cannot impute common membership in an enterprise simply from the fact that the [alleged members] engaged in business dealings").

### 2. *Plaintiffs Fail to Plausibly Allege Facts Showing that United "Conducted the Affairs" of a RICO Enterprise.*

Under section 1962(c), Plaintiffs must plausibly allege that United "conducted or participated in the conduct of the '*enterprise's* affairs,'" as opposed to its "*own* affairs." *In re Aetna UCR Litig.*, 2015 WL 3970168, at *28 (D.N.J. June 30, 2015) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). Plaintiffs must establish that United "participated in the operation or management" of the enterprise, *id.*, a requirement that cannot be satisfied merely by pointing to asserted cooperation between enterprise members that can be explained by ordinary commercial relationships.

Plaintiffs allege that United uses Data iSight "as a cover-up" to underpay Plaintiffs, (Doc. 1 ¶ 108), and that Data iSight's rates are "whatever RICO Defendants want, and direct Data iSight, to allow." (Doc. 1 ¶ 141.) The only fact

10

Plaintiffs allege to support these conclusory assertions, however, is the Complaint's assertion that United's reimbursement rates dropped significantly after United began to use Data iSight in 2019, just as United had informed Plaintiffs they would. (Doc. 1 ¶ 144.) Plaintiffs seek to draw an inference that United must have directed the alleged decrease in reimbursement rates through its control of the asserted "enterprise," but no such inference is warranted, as (i) Plaintiffs admit that Data iSight is a service used by multiple health plans and payers, (Doc. 1 ¶ 89 n. 3), and (ii) it is entirely unsurprising that a sophisticated payer such as United would be able to predict the overall impact its alleged "new benchmark pricing program" (Doc. 1 ¶ 82) would have on plan reimbursement rates. United's ordinary retention of a commercial service provider to provide non-binding medical service pricing information, (Doc. 1 ¶ 124), does not come close to establishing that United was thereby "conducting" the affairs of a distinct RICO enterprise. *See In re Aetna UCR Litig.*, 2015 WL 3970168, at *28.

> 3.    *Plaintiffs Cannot Plausibly Allege That the Alleged Representations Were "Calculated to Deceive."*

To plead predicate acts of mail and wire fraud, Plaintiffs must allege a scheme or artifice to defraud involving "some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978). Plaintiffs' admission that they were legally required to provide emergency medical

services to patients without regard to United's payment rates, however, (Doc. 1 ¶¶ 19-
21), renders implausible any suggestion that United deceptively misrepresented its
rates to Plaintiffs *for the purpose of inducing them to provide those services*.  Such
representations could not have been "reasonably calculated" to deceive Plaintiffs into
changing their position, as Plaintiffs were required to provide the at-issue emergency
services anyway.  Similarly, the Complaint's various conclusory assertions that
United engaged in concealment, fraud, or deception are disproved by Plaintiffs'
admission *that United notified them in advance of the very market-based rate
reductions about which Plaintiffs now complain*.  (Doc. 1 ¶¶ 80-86.)  Such
disclosures are incompatible with a claim sounding in concealment and fraud.  *See
Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 528 (3d Cir. 1998)
(finding there was no "cognizable 'scheme to defraud'" where plaintiff was "well
aware" of defendant's "true motivation"); *Walter v. Palisades Collection, LLC*, 480
F.Supp.2d 797, 808–09 (E.D. Pa. 2007) (describing "[t]he Third Circuit's position"
that "there can be no 'scheme to defraud' based on a misrepresentation if the plaintiff
is aware" of the truth regarding the subject of the alleged misrepresentation).

## D.  Plaintiffs Fail to State a Claim for RICO Conspiracy Under 18 U.S.C. § 1962(d).

In Count II, Plaintiffs allege a RICO conspiracy under 18 U.S.C. § 1962(d).
Plaintiffs' conspiracy allegations are dependent on their claim that United violated
section 1962(c), and fail for the same reasons described above.  *See Lightning Lube,*

*Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

## V.   PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY ERISA

ERISA's purpose is to provide comprehensive and uniform regulation over employee benefit plans. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990). ERISA contains two preemption clauses; first, § 502(a) allows a beneficiary or participant of an ERISA-regulated plan to bring a suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Second, § 514(a) is far-reaching and explicitly "supersede(s) any and all State laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). The phrase "relates to" is "deliberately expansive," and designed to establish plan regulation as "exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (quotation omitted). By preempting the field of employee benefit administration, in which plans often enroll participants located in more than one state, ERISA eliminates the threat of conflicting or inconsistent state regulation of such plans. *See id.* at 45–46.

Here, Plaintiffs' state law claims for breach of implied contract and unjust enrichment are preempted under §§ 502(a) and 514(e).

A.      **The Complaint Places Plan Benefit Provisions, not Provider Contracts, at Issue.**

Plaintiffs centrally contest the rates United paid on claims submitted under various employer-provided health plans.  (Doc. 1 ¶¶ 26-34, 40-46, 67-68, 70-72 (Fully Funded plan claims), 88 (Employer Funded plan claims), 172, 181.)  The Complaint repeatedly invokes United's legal obligations flowing from "insurance," "plans," or "coverage," and describes Plaintiffs' patients as "members" of the various plans that Plaintiffs contend underpaid their claims.  (*See, e.g.,* Doc. 1 ¶¶ 7, 28 197, 214.)

Plaintiffs seek to avoid ERISA preemption by pleading that plan "coverage" is undisputed with respect to each claim at issue, and that they are merely contesting the "rate" the plans paid.  (Doc. 1 ¶¶ 41, 43.)  Plaintiffs admit, however, that they refused to enter into any contractual agreement with United establishing payment rates for Plaintiffs' services independent of plan terms.  (Doc. 1 ¶¶ 40, 80-88, 92-95.) Plaintiffs' allegations that the plans were required to pay more are core ERISA benefit claims that ERISA squarely preempts.  *See Montvale Surgical Ctr. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2012 WL 6554404, at *3 (D.N.J. Dec. 14, 2012) ("[insurer's alleged] failure to pay the reasonable and customary rates for medical services" are "precisely the types of claims that are wholly preempted by ERISA's civil enforcement provision."); *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, 2011 WL 4737067, at *7 (D.N.J. June 30, 2011), *R. & R. adopted*, 2011 WL

14

4737063 (D.N.J. Oct. 6, 2011) (claims seeking increased reimbursements for alleged

underpayments are intertwined with ERISA and are completely preempted).

### B.    Plaintiffs' Claims are Conflict Preempted.

Plaintiffs' claims are "conflict preempted" under ERISA § 514(a), 29 U.S.C. §

1144(a).  Under the doctrine of conflict preemption, ERISA supersedes state laws

"insofar as they. . . relate to any employee benefit plan . . ." 29 U.S.C. § 1144(a).

"The key to § 514(a) is found in the words 'relate to.' . . .  'A law "relates to" an

employee benefit plan, in the normal sense of the phrase, if it has a connection with

or reference to such a plan.'" *Ingersoll-Rand Co.*, 498 U.S. at 138–39 (quoting *Shaw

v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-98 (1983)).  Plaintiffs' state law claims

centrally challenge United's administration of Plaintiffs' patients' health plans (*see,

e.g.*, Doc. 1 ¶¶ 28–35, 54, 88–89), putting Plaintiffs' state law claims squarely within

§ 514(a)'s expansive preemption reach.[5]

Plaintiffs seek to recover additional plan benefits—claims that depend on the

existence of health plans as a critical factor in establishing United's alleged liability.

*See, e.g., Riordan v. Optum & Oxford Health Plan*, 2018 WL 3105426, at *4 (D.N.J.

---

[5] Courts routinely construe ERISA to preempt a broad range of state law claims for payment of additional or higher benefits, including claims based on theories of negligence, fraud, breach of contract, estoppel, and quasi-contract. *See, e.g., Pilot Life Ins. Co.*, 481 U.S. at 43-44, 57; *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001); *Hartman v. Wilkes-Barre Gen. Hosp.*, 237 F.Supp.2d 552, 556 (M.D. Pa. 2002); *McCall v. Metro. Life Ins. Co.*, 956 F.Supp. 1172, 1184 (D.N.J. 1996).

June 25, 2018) (dismissing state law claims as preempted where the "crux of [the] [p]laintiffs' claims are that they were entitled to certain benefits and that Defendants wrongly denied those benefits . . . 'relate to' an ERISA-regulated plan because, if there were no plan, there would be no alleged causes of action."); *Christ Hosp. v. Local 272 Welfare Fund*, 2012 WL 12904677, at *4 (D.N.J. Apr. 16, 2012) ("The existence of the plan is essential to Plaintiff's claim as this Court would have to find that a certain amount of benefits are due under the plan in order to resolve the dispute.").[6]

For example, Plaintiffs' unjust enrichment claim alleges that "in exchange for premiums and/or other compensation, Defendants assume a duty to provide coverage to their members for emergency services." (Doc. 1 ¶ 214.) But the plans, which define the extent of their "coverage," are the only reason such obligations could conceivably exist, and reference to the terms of health plans is required to resolve those claims. *See Palmeri v. Citadel Broad.*, 2017 WL 3130282, at *3 (M.D. Pa. July 24, 2017) (breach of contract and unjust enrichment claims both preempted, "as they explicitly require

---

[6] *See also Zapiach v. Empire Blue Cross Blue Shield*, 2018 WL 1838017, at *4 (D.N.J. Apr. 17, 2018) ("Count One is based entirely on Defendant's alleged failure to fully reimburse Plaintiff for emergency services under the Plan. Because any determination as to Plaintiff's right to reimbursement of costs can only be made by referencing the terms of the ERISA-governed Plan, this claim is preempted under § 514(a)."); *Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*, 2018 WL 2758221, at *5–6 (D.N.J. June 7, 2018) (court dismissed state law claims as preempted because "Plaintiffs' claims individually makes clear that each one implicates the Plan's terms and thus 'relates' to the ERISA Plan.").

reference to [the Plan] and what it covers.") (quotations omitted); *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 3623832, at *2 (D.N.J. June 29, 2017) (unjust enrichment claim arising out of challenge to reimbursement amount for out-of-network claim preempted); *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, 2011 WL 4737063, at *3 (D.N.J. Oct. 6, 2011) (same).

Plaintiffs' breach of implied contract claim similarly challenges United's administration of Plaintiffs' patients' health plans, and the rates at which those plans paid benefit claims. (*See, e.g.*, Doc. 1 ¶¶ 191, 197.) The Third Circuit has long held that claims asserting violations of ERISA-covered plans that are framed in terms of state law breach of contract are preempted by ERISA. *See Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir. 1989); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014); *Martellacci v. Guardian Life Ins. Co. of Am.*, 2009 WL 440289, at *3 (E.D. Pa. Feb. 19, 2009); *Temple Univ. Children's Med. Ctr. v. Grp. Health, Inc.,* 413 F.Supp.2d 530, 533 (E.D. Pa. 2006). Indeed, if this were not the result, competing state laws could require plans to apply different methodologies and/or different rates to the same type of claim depending upon the state in which the member received care. Conflict preemption guards against precisely such a scenario. *See Pilot Life Ins. Co.*, 481 U.S. at 46 (stressing that ERISA's "substantive and enforcement provisions . . . are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans.") (quoting 120 Cong. Rec. 29,197 (1974)).

### C.    Plaintiffs' Claims Are Completely Preempted.

Plaintiffs' state law claims must also be dismissed as completely preempted. Complete preemption "permits removal of an action to federal court when (1) a federal statute wholly displaces a state law [claim] and creates a superseding [claim], and (2) there is a 'clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law.'" *N. Jersey Brain & Spine Ctr.*, 2011 WL 4737067, at *2 (quoting *Ry. Labor Execs. Ass'n v. Pittsburg & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988)).  Putative state law claims are subject to complete preemption if:  (i) the plaintiff could have brought its claims under ERISA; and (ii) no other independent legal duty supports the plaintiff's claim.  *Pascack Valley Hosp., Inc. v.  Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210-11 (2004)). Both prongs are satisfied here.

With respect to prong one, § 502(a) empowers "a participant or beneficiary" to bring a civil action "to recover benefits due to [it] under the terms of [its] plan."  29 U.S.C. § 1132(a)(1)(B).  A medical provider may obtain derivative standing to sue under ERISA through an assignment of benefits—which Plaintiffs assert they have secured (Doc. 1 ¶¶ 26–27).  *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d

369, 372 (3d Cir. 2015). [7]  Thus, prong one is satisfied.

With respect to prong two, "[a] legal duty is 'independent' if it 'would exist whether or not an ERISA plan existed.'"  *Khan v. Guardian Life Ins. Co. of Am.*, 2016 WL 1574611, at *2 (D.N.J. Apr. 19, 2016) ("Determining whether the amount paid to Plaintiff was sufficient would require the Court to review the details of the Plan.").  Claims related to the calculation and payment of plan benefits go to the "essence of the function of an ERISA plan," and are preempted.  *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 150 (3d Cir. 2007); *Levine v. United Healthcare Corp.*, 402 F.3d 156, 162-63 (3d Cir. 2005).  Here, Plaintiffs seek increased plan payments, and there is no network contract to create an independent legal duty with respect to payment rates.  Thus, prong two is satisfied, and the claims are preempted.

**D.**   **Plaintiffs' Claims Cannot Escape Preemption Through Artful Pleading.**

Preemption does "not depend on the type of relief requested in a complaint." *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 678 (3d Cir. 2000).  Plaintiffs thus cannot "thwart Congress's intent to completely preempt claims arising out of the

---

[7] In *Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, the court concluded that it need not determine whether an assignment is valid, nor whether an anti-assignment clause exists, to find complete preemption.  2017 WL 685101, at 6 n.5 (D.N.J. Feb. 21, 2017) ("The Court is not ruling that the assignment at issue was in fact valid or that it was not subject to anti-assignment provision.  Instead, solely for purposes of this Opinion, the Court assumes the validity of the assignment.").

denial of ERISA benefits by artful pleading." *Id.* at 679 (quotation omitted).  The

mere fact the Complaint does not overtly invoke ERISA is irrelevant where, as here,

all of Plaintiffs' claims seek an order requiring United-administered plans to pay

Plaintiffs' claims at increased rates.  *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58,

66 (1987); *Pilot Life Ins. Co.*, 481 U.S. at 57.

## VI.   PLAINTIFFS HAVE FAILED TO PLEAD ANY PLAUSIBLE STATE LAW CLAIM FOR RELIEF AGAINST DEFENDANTS

### A.   Plaintiffs Fail to Allege the Elements of an Implied-in-Fact Contract.

"[A]n implied-in-fact contract is a true contract arising from mutual agreement

and intent to promise, but where the agreement and promise have not been verbally

expressed.  The agreement is inferred from the conduct of the parties." *In re Penn*

*Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987).  A plaintiff seeking to enforce

an implied-in-fact contract must establish all of the elements required for contracts,

including, "an offer, acceptance, consideration, and/or mutual agreement," and

specifically, "time or manner of performance, and price or consideration." *Great N.*

*Ins. Co. v. ADT Sec. Servs., Inc.*, 517 F.Supp.2d 723, 736 (W.D. Pa. 2007).

Plaintiffs do not allege facts plausibly demonstrating United intended to be

bound to a contract with Plaintiffs governing claim payment rates.  On the contrary,

Plaintiffs allege that contract negotiations failed because the parties *could not agree*

*on rates*, thus foreclosing any argument that there was mutual agreement.  (*See* Doc.

1 ¶¶ 80-88, 92-95.)  Plaintiffs' implied-in-fact contract theory further fails for

indefiniteness as to what rates were being agreed to, and for want of a meeting of the

minds (Doc. 1 ¶ 200) ("Plaintiffs *did not agree* that the lower reimbursement rates

paid by Defendants were reasonable … .") (emphasis added).

Further, Plaintiffs' claim is not supported by any factual allegations that

United received consideration or enjoyed any bargained-for-benefit from Plaintiffs

when they rendered medical services to their patients.  In fact, the only possible

beneficiary of Plaintiffs' medical services is the patients.  (*See, e.g.*, Doc. 1 ¶ 1.)

Thus, any cause of action for breach of implied contract fails as a matter of law.  *See*

*Temple Univ. Hosp., Inc. v. City of Phila.*, 2006 WL 51206, at *3 (Pa. Ct. C.P. Phila.

Cty. Jan. 3, 2006) (dismissing claim for implied-in-fact contract because "there was

no exchange of consideration" where hospital "was legally bound to provide

emergency care services" under EMTALA and under Pennsylvania law).

### B.     Plaintiffs Fail to Allege the Elements of an Unjust Enrichment Claim.

Plaintiffs seeking recovery for unjust enrichment must prove (1) benefits

conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant;

and (3) acceptance and retention of such benefits under such circumstances that it

would be inequitable for defendant to retain the benefit without payment of value.

*Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. Ct. 2017).

Plaintiffs fail to allege any of the elements of an unjust enrichment claim.  Plaintiffs

further fail to allege any facts showing that the medical services rendered to their

patients conferred a benefit on United. Courts have routinely dismissed unjust

enrichment claims brought by providers against insurers, because, as a matter of law,

a provider's services benefit only *its patients*, and not the patients' insurer. *See*

*Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, 2012 WL 762498, at *8-9

(D.N.J. Mar. 6, 2012) ("United, as the insurance company, 'derives no benefit from

those services [performed by the medical provider]; indeed, what the insurer gets is a

ripened obligation to pay money to the insured-which hardly can be called a benefit")

(quoting *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563

(S.D.N.Y. 2001)); *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938,

966 (E.D. Tex. 2011) ("Even if [the insurer] received some benefit as a result of [a

provider] providing medical services to its insureds, a proposition the court finds

dubious, [the provider's] services were rendered to and for its patients, not [the

insurer].") (footnote omitted).[8]  Plaintiffs' unjust enrichment claim fails as a matter of

_____

[8] *See also MC1 Healthcare, Inc. v. United Health Grp., Inc.*, 2019 WL
2015949, at *10 (D. Conn. May 7, 2019), *on reconsideration in part*, 2019 WL
3202965 (D. Conn. July 16, 2019) (collecting cases and noting "courts have
repeatedly held that providers cannot bring unjust enrichment claims against
insurance companies based on the services rendered to insureds."); *Peacock Med.
Lab, LLC v. UnitedHealth Grp., Inc.*, 2015 WL 2198470, at *5 (S.D. Fla. May 11,
2015) (a healthcare "provider who provides services to an insured does not benefit
the insurer."); *Tex. Spine & Joint Hosp., Ltd. v. Blue Cross & Blue Shield of Tex., a
Div. of Health Care Serv. Corp.*, 2015 WL 13649419, at *7 (E.D. Tex. May 28, 2015)
(dismissing quasi-contract claim by medical provider against insurer on similar
reasoning in finding that the healthcare services rendered by the medical providers to
the patient/beneficiaries under the health plan was not a benefit/consideration to the

law.

## VII. <u>PLAINTIFFS' DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED</u>

Plaintiffs' declaratory judgment claim should be dismissed as duplicative of Plaintiffs' other claims, as it requires identical factual and legal determinations. *See In re Lincoln Nat'l COI Litig.*, 269 F. Supp. 3d 622, 640 (E.D. Pa. 2017).

## VIII. <u>CONCLUSION</u>

Based on the foregoing and United's Motion to Dismiss (Doc. 22), United respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

---

defendant benefits plan administrator); *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) ("[A provider] can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services."); *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, 2018 WL 2422314, at *9 (E.D. Ark. May 29, 2018) (dismissing quasi-contract claim because the health insurance benefits claims administrator "did not ask for nor receive" the medical provider's services). One outlier Pennsylvania case has permitted a provider to assert an unjust enrichment claim against an insurer. *See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 507-08 (Pa. Super. Ct. 2003). The Pennsylvania Superior Court made no effort to address the overwhelming majority view, much less attempt to reconcile its reasoning, and this Court should decline to follow *Temple* in deciding this Motion.

Respectfully submitted,

/s/ Karl S. Myers
Karl S. Myers
STRADLEY RONON
STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA  19103
(215) 564-8193
(215) 564-8120 facsimile

Gregory F. Jacob (admitted *pro hac vice*)
Kevin D. Feder (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
gjacob@omm.com
kfeder@omm.com

Natasha S. Fedder (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899
(213) 430-6000
nfedder@omm.com

Amanda L. Genovese (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
(212) 326-2000
agenovese@omm.com

Counsel for defendants

Dated: October 11, 2019

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EMERGENCY CARE SERVICES OF PENNSYLVANIA, P.C., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITEDHEALTH GROUP, INC., *et al.*, <br><br> Defendants. | Civ. No. 19-1195 <br> (Judge Rambo) |

## CERTIFICATION PURSUANT TO LOCAL RULE 7.8(b)(2)

The United Defendants' Memorandum of Law in Support of their Motion to Dismiss does not exceed 6,000 words.  *See* (Doc. 28) (granting Defendants' motion for leave to file an overlength supporting brief).  The body of the Memorandum of Law, excluding the tables and cover page, contains 5,852 words.

Respectfully submitted,

/s/ Karl S. Myers
Karl S. Myers
STRADLEY RONON
STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA  19103
(215) 564-8193
(215) 564-8120 facsimile

Gregory F. Jacob (admitted *pro hac vice*)
Kevin D. Feder (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW

Washington, DC 20006
(202) 383-5300
gjacob@omm.com
kfeder@omm.com

Natasha S. Fedder (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899
(213) 430-6000
nfedder@omm.com

Amanda L. Genovese (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
(212) 326-2000
agenovese@omm.com

Counsel for defendants

## <u>CERTIFICATE OF SERVICE</u>

I, Karl S. Myers, hereby certify that I am this day serving the foregoing

document upon counsel of record via the Court's electronic filing system.

/s/ Karl S. Myers
Karl S. Myers

Dated:  October 11, 2019