# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EMERGENCY CARE SERVICES      :
OF PENNSYLVANIA, P.C., *et al.*,    :
                             :    NO. 1:19-CV-01195-SHR
          Plaintiffs         :
                             :    Rambo, J.
     v.                      :
                             :
UNITEDHEALTH GROUP, INC.,    :
*et al.*;                      :
                             :
          Defendants.        :

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

---

Bridget E. Montgomery (PA ID 56105)
Eckert Seamans Cherin & Mellott, LLC
213 Market Street, 8th Floor
Harrisburg, PA  17101
(717) 237-6054
bmontgomery@eckertseamans.com

Alan Lash (FL ID 510904) (*pro hac vice*)
Justin Fineberg (FL ID 0053716) (*pro hac vice*)
Lash & Goldberg LLP
100 S.E. 2nd Street, Suite 1200
Miami Tower
Miami, FL  33131
(305) 347-4040
alash@lashgoldberg.com
jfineberg@lashgoldberg.com

*Counsel for Plaintiffs, Emergency Care Services of Pennsylvania, P.C. and Emergency Physician Associates of Pennsylvania, P.C.*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................... 1

LEGAL STANDARD ................................................................................. 4

ARGUMENT ............................................................................................. 5

    I.    Plaintiffs Adequately Plead a Civil RICO Claim ............................. 5

        A.    Plaintiffs Properly Allege a RICO Enterprise      6

        B.    Plaintiffs Properly Allege a Pattern of Racketeering
            Activity      9

            1.    Plaintiffs plead mail and wire fraud with
                sufficient 9(b) specificity ............................... 11

            2.    Plaintiffs' mission to treat all patients does not
                defeat allegations of fraud ............................ 15

            3.    United's warnings of a rate reduction do not
                absolve it of liability ...................................... 17

        C.    The Complaint Properly Alleges that Defendants
            Participated in or Conducted the Affairs of a RICO
            Enterprise      17

        D.    Plaintiffs Were Injured by Reason of Defendants'
            Unlawful Racketeering      19

    II.    The Complaint States a Cause of Action for RICO
        Conspiracy ................................................................................... 22

    III.    Plaintiffs' State Law Claims are Not Preempted by ERISA ............. 23

        A.    The State Law Claims Are Not Conflict Preempted      24

        B.    Plaintiffs' State Law Claims Are Not Completely
            Preempted      28

    IV.    The Complaint States a Cause of Action for Unjust
        Enrichment ................................................................................... 32

    V.    The Complaint States a Cause of Action for Breach of an
        Implied-in-Fact Contract ............................................................ 35

    VI.    Plaintiffs' Declaratory Judgment Count Is Not Duplicative of
        Plaintiffs' Other Claims ............................................................. 40

CONCLUSION .......................................................................................... 40

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*, 2015 WL
    1954287 (E.D. Pa. Apr. 30, 2015) ..................................................... 32, 36, 40

*Am. Trade Partners, L.P. v. A-1 Int'l Importing Enters., Ltd.,* 757 F.
    Supp. 545 (E.D. Pa. 1991) .................................................................. 10

*AMA Realty LLC v. 9440 Fairview Ave., LLC*, 2017 WL 6728641
    (D.N.J. Dec. 28, 2017) ................................................................... 11, 19

*Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*,
    2013 WL 1314154 (E.D. Ky. Mar. 28, 2013) .................................. 41

*Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F.
    Supp. 3d 1289 (S.D. Fla. 2019) ......................................................... 41

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) .................................. 4, 5, 13

*Boyle v. United States*, 556 U.S. 938 (2009) ................................................... 8

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) .............. 12, 19, 23, 24

*Brock v. Thomas*, 782 F. Supp. 2d 133 (E.D. Pa. 2011) ................................ 27

*Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.,
    N.A., Inc.*, 519 U.S. 316 (1997) ........................................................ 29

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014) .................... 36

*Christ Hosp. v. Local 1102 Health and Benefit Fund*, 2011 WL
    5042062 (D.N.J. Oct. 24, 2011) ....................................................... 37

*Clark v. Conahan*, 737 F. Supp. 2d 239 (M.D. Pa. 2010) ............................ 20

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 3623832
    (D.N.J. June 29, 2017) ...................................................................... 33

*Comercializadora Recmaq Limitada v. Hollywood Auto Mall, LLC*,
    2013 WL 2248140 (S.D. Cal. May 20, 2013) .................................. 17

*Comprehensive Spine Care PA v. Oxford Health Ins. Co.*, 2018 WL
    6445593 (D.N.J. Dec. 10, 2018) ................................................. 32, 35, 37

*Crown Cork & Seal Co. Inc. v. Ascah*, No. 93–2933, 1994 WL 57217
    (E.D. Pa. Feb. 18, 1994) ..................................................................... 8

*Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, 2018 WL 3585069
    (E.D. Pa. July 26, 2018) ................................................................ 24, 25

*Devon IT, Inc. v. IBM Corp.*, 805 F. Supp. 2d 110 (E.D. Pa. 2011) ...................... 12

*E. Coast Advanced Plastic Surgery v. AmeriHealth*, 2018 WL
    1226104 (D.N.J. Mar. 9, 2018) .................................................... 35, 36

*Eagle v. Snyder*, 604 A.2d 253 (Pa. Super. 1992) ....................................... 47

*El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico,
    Inc.*, 683 F. Supp. 2d 454 (W.D. Tex. 2010) .................................... 41

*Elia v. Powell,* No. 3:11-CV-465, 2012 WL 601885 (M.D. Pa. Feb. 23, 2012) ...........................................................................................5

*Emergency Physicians of St. Clare's v. United Health Care,* 2014 WL 7404563 (D.N.J. Dec. 29, 2014) ................................................ 30, 37

*Fleetwood Servs., LLC v. Complete Bus. Sols. Grp., Inc.,* 374 F. Supp. 3d 361 (E.D. Pa. 2019) ............................................................ passim

*Freedom Med., Inc. v. Gillespie,* 2013 WL 2292023 (E.D. Pa. May 23, 2013) .........................................................................................10

*Glastein v. Aetna, Inc.,* 2018 WL 4562467 (D.N.J. Sept. 24, 2018) ......................31

*Gobeille v. Liberty Mut. Ins. Co.,* 136 S.Ct. 936 (2016).................................. 29, 30

*Grant v. Turner,* 505 Fed. Appx. 107 (3d Cir. 2012) ...............................................13

*Hemi Grp., LLC v. City of New York,* 559 U.S. 1 (2010) ...........................................25

*Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258 (1992).............................................22

*Husik v. Lever,* 95 Pa. Super. 258 (1929) ................................................................47

*Impala Platinum Holdings Ltd.,* 2016 WL 8256412 (E.D. Pa. Sept. 16, 2016) ........................................................................................24

*In re Aetna UCR Litig.,* 2015 WL 3970168................................................................22

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.,* 804 F.3d 633 (3d Cir. 2015)..............................................................................25

*In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300 (3d Cir. 2010) .......... 7, 8, 21, 27

*In re Sunrise Secs. Litig.,* 793 F. Supp. 1306 (E.D. Pa. 1992) ...............................14

*In re: Le-Nature's, Inc., Commercial Litig.,* No. 9-CV-469, 2010 WL 11469939 (W.D. Pa. May 13, 2010) ...............................................4, 5

*Indianapolis Life Ins. Co. v. Hentz,* 2008 WL 4453223 (M.D. Pa. Sept. 30, 2008) ....................................................................................13

*Jewish Lifeline Network, Inc. v. Oxford Health Plans (NJ), Inc.,* 2015 WL 2371635 (D.N.J. May 18, 2015)...............................................33

*Kaiser Found. Health Plan, Inc. v. Medquist, Inc.,* 2009 WL 961426 (D.N.J. Apr. 8, 2009) ............................................................14

*Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153 (3d Cir. 1993) ................... 26, 27

*Lum v. Bank of Am.,* 361 F.3d 217 (3d Cir. 2004).............................................5, 13

*MBIA Ins. Corp. v. Royal Indem. Co.,* 221 F.R.D. 419 (D.Del. 2004)....................17

*MHA, LLC v. Empire Healthchoice HMO, Inc.,* 2018 WL 549641 (D.N.J. Jan. 25, 2018) ........................................................ 35, 36, 37

*Montvale Surgical Ctr. v. Horizon Blue Cross Blue Shield of N.J., Inc.,* 2012 WL 6554404 (D.N.J. Dec. 14, 2012) .........................................33

*N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.,* 2017 WL 659012 (D.N.J. Feb. 17, 2017) ............................................................ passim

*N.J. Carpenters and the Trs. Thereof v. Tishman Constr. Corp. of N.J.,* 760 F.3d 297 (3d Cir. 2014)................................................................37

*N.Y. City Health & Hosps. Corp. v. WellCare of N.Y., Inc.*, 937
   N.Y.S.2d 540 (N.Y. Sup. Ct. 2011)...................................................................41

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers
   Ins. Co.*, 514 U.S. 645 (1995).........................................................................29

*Nat'l Labs., LLC v. United Healthcare Grp., Inc.,* 2018 U.S. Dist.
   LEXIS 58328 (S.D. Fla. Apr. 3, 2018)..................................................... 41, 42

*Neder v. United States*, 527 U.S. 1 (1999).......................................................... 12, 19

*Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P.*, 132 F. Supp. 3d
   645 (E.D. Pa. 2015) ................................................................................ 43, 45, 46

*Palmeri v. Citadel Broad.*, 2017 WL 3130282 (M.D. Pa. July 24,
   2017) ....................................................................................................................33

*Pascack Valley Hosp. v. Local 464A Welfare Reimbursement Plan*,
   388 F.3d 393 (3d Cir. 2004)..............................................................................34

*Pasquantino v. United States*, 544 U.S. 349 (2005) ................................................12

*Perlberger v. Perlberger,* No. CIV. A. 97-4105, 1998 WL 76310
   (E.D. Pa. Feb. 24, 1998) ......................................................................................4

*Prudential Ins. Co. of Am. V. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d
   591 (D.N.J. 2014) ................................................................................................13

*Reves v. Ernest & Young, 507 U.S. 170 (1993)* .......................................................20

*Riordan v. Optum & Oxford Health Plan*, 2018 WL 3105426 (D.N.J.
   June 25, 2018).....................................................................................................33

*River Park Hosp., Inc. v. BlueCross BlueShield of Tenn. Inc.*, 173
   S.W.3d 43 (Tenn. Ct. App. 2002)......................................................................41

*Salinas v. United States*, 522 U.S. 52 (1997)............................................................26

*Schwartz v. Lawyers Title Ins. Co.*, 970 F. Supp. 2d 395 (E.D. Pa.
   2013) ......................................................................................................................8

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786
   (3d Cir. 1984)......................................................................................................13

*Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001)..............................................................26

*Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832
   A.2d 501 (Pa. Super. 2003), *cert. denied* 577 Pa. 724 (2004) ............. *passim*

*United States v Hannigan*, 27 F.3d 890 (3d Cir. 1994) ...........................................11

*United States v. Pearlstein*, 576 F.2d 531 (3d Cir. 1978).......................................17

United States v. Urban, 404 F.3d 754 (3d Cir. 2005).................................................8

*Westlake Plastic Co. v. O'Donnell*, 182 F.R.D. 165 (E.D. Pa. 1998) ....................14

*Zapiach v. Empire Blue Cross Blue Shield*, 2018 WL 1838017 (D.N.J.
   Apr. 17, 2018)......................................................................................................34

*Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295 (D.N.J. 2005)....................26

**Statutes**

18 U.S.C. § 1961 ...................................................................................................4

18 U.S.C. § 1961(1) .............................................................................................11

18 U.S.C. § 1961(4) ...............................................................................................7

18 U.S.C. § 1962(c) .............................................................................. 5, 6, 26, 27

18 U.S.C. § 1962(d) ......................................................................................26, 27

18 U.S.C. § 1964(c) ...............................................................................................6

29 U.S.C. § 1132(a) .............................................................................................34

29 U.S.C. § 1132(a)(1) .........................................................................................35

29 U.S.C. § 1144(a) .............................................................................................28

40 Pa. C.S. § 3042 ...............................................................................................42

42 U.S.C. § 300gg-19a(b) ....................................................................................42

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................4, 10

Fed. R. Civ. P. 8 ....................................................................................................4

## **INTRODUCTION**

Plaintiffs Emergency Care Services of Pennsylvania and Emergency Physician Associates of Pennsylvania are providers of emergency medicine. Plaintiffs' physicians and advance practice nurses staff hospital emergency rooms throughout Pennsylvania, where they provide lifesaving medical care to patients from all walks of life.  Defendants (collectively, "United") are large health insurers and claims administrators, whose members include patients to whom Plaintiffs provide and have provided emergency medical treatment.  This action arises out of United's fraudulent scheme to deprive Plaintiffs of the reasonable (*i.e.,* the "usual and customary") reimbursement United owes Plaintiffs for the emergency services Plaintiffs have rendered to United's members.

Historically, United has reimbursed Plaintiffs at 75% to 90% of Plaintiffs' billed charges, which is a reasonable and usual and customary reimbursement rate for Plaintiffs' services.  Within the last year, however, United has arbitrarily and radically slashed reimbursement payments to Plaintiffs and has employed corrupt practices designed to cloak its rate calculations in a false veneer of objectivity. United purports to reimburse Plaintiffs in accordance with fact-based data supplied by a supposedly independent third-party (Data iSight), when, in fact, United's payments to Plaintiffs have no such independent and objective basis.

The Complaint sets forth—in more than 200 detailed paragraphs—the precise nature and scope of United's misconduct.  Specifically, United and Data iSight falsely present Data iSight as an independent aggregator of market data that provides transparent, objective, and geographically-adjusted determinations of fair reimbursement rates for Plaintiffs' services.  But the rates "determined" by Data iSight are not data-driven.  Instead, Data iSight simply conjures up whatever unscientific rate United has predetermined it is willing to pay. This scheme is perpetuated through false statements on Data iSight's website and in the communications sent from United and Data iSight to medical providers and members.  These corrupt machinations form the basis of Plaintiffs' civil RICO and RICO conspiracy claims (Counts I and II).  Plaintiffs' pendent state law claims for breach of an implied-in-fact contract and unjust enrichment (Counts III and IV) seek recovery for the underpayments themselves.  In Count V, Plaintiffs seek declaratory relief establishing the appropriate rates of reimbursement.

This corrupt scheme is unfortunately precedented.  In 2009, United orchestrated an illegal scheme to depress the reimbursement rates paid to out-of-network medical providers.  At the time, United owned a company called Ingenix, which maintained a widely used database of health care billing information. Through its control of Ingenix, United manipulated the information in the database to create a misleading picture of the customary rates in the relevant markets.  Where

United was legally obligated to reimburse medical providers at "normal," "reasonable," or "usual and customary" rates, this deliberately skewed data afforded a pretext to pay reimbursements below what an objective, unbiased analysis of the markets would dictate. Eventually, United was caught red-handed. In addition to settling the resulting class action brought by out-of-network providers for $350 million, United paid $50 million to resolve an enforcement action brought by the New York Attorney General's Office. Under the terms of this latter settlement, the $50 million was used to fund an independent, transparent entity known as FAIR Health, which now serves as an industry benchmark repository of reimbursement information. Fast forward to today, and it is *déjà vu* all over again. United has eschewed reliance on a truly independent and transparent database and is once again employing deceptive methods to artificially deflate and manipulate out-of-network reimbursements.

Throughout their Motion to Dismiss [D.E. 22] ("Def. Mot.") and Memorandum of Law in Support [D.E. 30] ("Def. Mem."), United conflates the factual allegations, confuses the legal theories, and misconstrues the applicable law. United proffers various arguments for dismissal of both the RICO and common law claims. However, as shown below, the arguments in both Defendants' Motion and Memorandum of Law fall apart under scrutiny and should be rejected by the Court. Accordingly, the Motion must be denied.

# **LEGAL STANDARD**

Rule 8, Fed. R. Civ. P., requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569 (2007).   A complaint must merely contain "enough factual matter (taken as true) to suggest" the elements of the claims asserted.  *In re: Le-Nature's, Inc., Commercial Litig.,* No. 9-CV-469, 2010 WL 11469939, at *1 (W.D. Pa. May 13, 2010).

A motion to dismiss a RICO[1] claim is evaluated under the same "liberal standard which applies to Rule 12(b)(6) motions to dismiss non-RICO claims." *Perlberger v. Perlberger,* No. CIV. A. 97-4105, 1998 WL 76310, at *3 (E.D. Pa. Feb. 24, 1998).   Defendants bear the burden of establishing that Plaintiffs' Complaint fails to state a claim.  *Elia v. Powell,* No. 3:11-CV-465, 2012 WL 601885, at *2 (M.D. Pa. Feb. 23, 2012).   All factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in the light most favorable to the plaintiff.  *Le-Nature's*, 2010 WL 11469939 at *1.   Plaintiffs must simply "nudge [their] claims across the line from conceivable to plausible" in order to survive a motion to dismiss.  *Twombly,* 550 U.S. at 570.

---

[1]  "RICO" means the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

Where a plaintiff asserts civil RICO predicated upon mail and wire fraud, only the specific allegations of fraud are subject to Rule 9(b)'s heightened pleading standard. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004), *abrogated in part on different grounds, Twombly*, 550 U.S. at 557. Rule 9(b)'s heightened standard does not apply to the other RICO elements. *Le-Nature's*, 2010 WL 11469939, at *1.

## ARGUMENT

### I.     Plaintiffs Adequately Plead a Civil RICO Claim.

Title 18 U.S.C. § 1962(c) provides that it shall be "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The elements of a § 1962(c) violation are: (1) the defendant's participation in the conduct (2) of an enterprise (3) through a pattern of racketeering activity. *Fleetwood Servs., LLC v. Complete Bus. Sols. Grp., Inc.,* 374 F. Supp. 3d 361, 373 (E.D. Pa. 2019) (quotations and ellipsis omitted). A civil plaintiff must further establish standing, which requires injury "by reason of" the RICO violation.[2] *Id.* The Complaint easily satisfies these elements.[3]

---

[2] 18 U.S.C. § 1964(c) creates a civil cause of action for substantive violations of § 1962. Here, Plaintiffs allege a violation of § 1962(c).

[3] Capitalized terms used herein have the same meaning as is given to them in the Complaint, unless otherwise specified herein.

United's threshold argument is that the Complaint should be dismissed because Plaintiffs have not individually identified in detail the literally thousands of claims for reimbursement at issue. Def. Mem. at 3-5. United has not presented any law requiring such an extraordinarily rigorous degree of specificity in pleading RICO cases or in an analogous context. Rather, United's supporting authority provides merely that an individual claimant seeking benefits under a health plan must identify the services rendered and the plan, which are both necessary for a determination of coverage and benefits. But Plaintiffs are not asserting claims for benefits under a health plan. *See* Section III, *infra*. Given Plaintiffs' claims for conduct in violation of the federal RICO statute, and pendent state-law claims for breach of implied contract and unjust enrichment, a complete accounting of the claims would be necessary only for a damages calculation.

Because Plaintiffs have adequately stated a cause of action against UnitedHealth Group, Inc., United HealthCare Services, Inc., UnitedHealthcare, Inc., and UnitedHealth Networks, Inc. (defined in paragraph 96 of the Complaint as the "RICO Defendants") for violations of RICO, the Motion should be denied.

## A.    Plaintiffs Properly Allege a RICO Enterprise.

A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also Fleetwood,* 374 F.

Supp. 3d at 373.   There are two types of associations that constitute valid "enterprises" under RICO: (1) any sort of formal legal entity, such as a corporation or partnership; and (2) an "association-in-fact," which is "any union or group of individuals associated in fact although not a legal entity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 364 (3d Cir. 2010).   Plaintiffs plead an association-in-fact Enterprise.   Compl. ¶ 97.

An association-in-fact enterprise consists of a formal or informal ongoing organization, whose various associates function as a continuing unit, and which has an existence separate and apart from the alleged pattern of racketeering activity. *Fleetwood,* 374 F. Supp. 3d at 373 (citing cases).  In essence, "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Id.* at 374 n.13 (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009)).  The enterprise need not have "a formal structure or a systematic plan." *Schwartz v. Lawyers Title Ins. Co.*, 970 F. Supp. 2d 395, 402 (E.D. Pa. 2013) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010)).  Notably, a plaintiff may plead a corporation as both a defendant "person" and part of an association-in-fact enterprise, *Crown Cork & Seal Co. Inc. v. Ascah*, No. 93–2933, 1994 WL 57217, *4 (E.D. Pa. Feb. 18, 1994), and a RICO enterprise "may be comprised only of defendants, or of defendants and non-defendants." *United States v. Urban*, 404 F.3d 754, 782 (3d Cir. 2005).

The Complaint properly pleads the existence of a RICO enterprise by alleging that the RICO Defendants form an association-in-fact Enterprise.  Compl. ¶¶ 96-100, 177, 186.  The Enterprise consists of United and third-party entities, including Data iSight, that purportedly develop software used in United's reimbursement calculations.  *Id.* ¶ 104.  The Enterprise has the common and continuing purpose of dramatically reducing allowed provider reimbursement rates for its own pecuniary gain, by aiming to fraudulently prevent Plaintiffs from obtaining reasonable payment for the emergency services Plaintiffs render to United members.  *Id.* ¶ 179; *see also id.* ¶ 173 ("The purpose of, and the direct and proximate result of the above-alleged Enterprise and scheme was, and continues to be, to unlawfully reimburse Plaintiffs at unreasonable rates, to the harm of Plaintiffs, and to the benefit of the Enterprise.").  As described in detail below, the Enterprise engaged in an unlawful scheme involving multiple acts of mail and wire fraud.  *Id.* ¶ 180.  Each of the RICO Defendants has an existence separate and distinct from the Enterprise, in addition to directly participating in and acting as a part of the Enterprise.  *Id.* ¶ 178.

These allegations satisfy the RICO enterprise element.  *Fleetwood,* 374 F. Supp. 3d at 373 (holding that the plaintiff sufficiently alleged an association-in-fact enterprise where the plaintiff's complaint "describes the [association-in-fact enterprise] as a group of John and Jane Doe individuals and two corporate entities associated with one-another which [ ] engaged in unlawful activity, including in a

course of conduct (*i.e.*, mail and wire fraud . . .) for a common purpose (to make money)"); *Am. Trade Partners, L.P. v. A-1 Int'l Importing Enters., Ltd.,* 757 F. Supp. 545, 550 (E.D. Pa. 1991) (finding that the complaint sufficiently alleged a common purpose because the alleged goal of the enterprise was to "defraud [plaintiff] out of its money for personal enrichment").

Contrary to Defendants' arguments, the alleged Enterprise shows that United and Data iSight were engaged in more than just an ordinary commercial relationship.[4]

### B.   Plaintiffs Properly Allege a Pattern of Racketeering Activity.

Plaintiffs have properly alleged a pattern of racketeering activity consisting of multiple acts of mail and wire fraud.   *See* 18 U.S.C. § 1961(1) (defining RICO

---

[4] United's reliance on *Freedom Med., Inc. v. Gillespie*, 2013 WL 2292023, at *1 n.2 (E.D. Pa. May 23, 2013) is misguided.  Contrary to United's characterization, the court in *Gillespie* did not conclude that an association-in-fact could not be established by business dealings.  Instead, on summary judgment, the court found no evidence that the parties engaged in a common undertaking to steal.  *Id. at *19.* That is unlike the instant case, where Plaintiffs have alleged in detail the Enterprise's unlawful scheme to defraud.  *See Fleetwood,* 374 F. Supp. 3d at 374 ("The Amended Complaint alleges Defendants have done more than carry on the normal affairs of actors in the legal credit market.").  In any event, in relying on *Gillespie,* United essentially ask this Court to decide, at the pleading stage of the case, a disputed factual issue -- their characterization of the relationship and activities involving RICO Defendants, Data iSight, and MultiPlan.  Resolution of these factual disputes is not appropriate at the Rule 12(b)(6) motion to dismiss stage.  *See, e.g., Clark v. Conhan,* 737 F. Supp. at 269-70 (holding that the contours and scope of a RICO individual defendant's relationship with a corporate entity must await the development of the factual record); *see also Le-Nature's. Inc. Commercial Litig.* No. 9-CV-469, 2010 WL 11469939 at *1, n.2 (E.D. Pa. May 23, 2010).

predicate offenses to include mail and wire fraud).

The mail and wire fraud statutes criminalize schemes to defraud that are accomplished in part through use of the mail or phones or internet wires.  18 U.S.C. §§ 1341, 1343.  Their elements include: (1) the existence of a scheme to defraud; (2) participation in the scheme by the defendant with the specific intent to defraud; and (3) use of the mail or wires in furtherance of the scheme.  *See, e.g., United States v Hannigan*, 27 F.3d 890, 892 (3d Cir. 1994).  A "scheme or artifice to defraud" means "any plan, device, or course of action to deprive another of money or property . . . by means of false or fraudulent pretenses, representations or promises reasonably calculated to deceive persons of average prudence."  *AMA Realty LLC v. 9440 Fairview Ave., LLC*, 2017 WL 6728641, at *4 (D.N.J. Dec. 28, 2017) (citation and internal quotations omitted); *accord Devon IT, Inc. v. IBM Corp.*, 805 F. Supp. 2d 110, 123 (E.D. Pa. 2011).

The mail and wire fraud statutes prohibit the *formation* of schemes to defraud; a violation does not require *completion* of an actual fraud.  *Neder v. United States*, 527 U.S. 1, 24-25 (1999); *Pasquantino v. United States*, 544 U.S. 349, 371 (2005) (wire fraud statute "punishes the scheme, not its success").  As such, mail and wire fraud do not include the reliance and damages elements of common law fraud.  *Neder*, 54 U.S. at 24-25.  Moreover, where RICO is predicated upon mail and wire fraud, "one can conduct the affairs of a qualifying enterprise through a pattern of

such acts without anyone relying on a fraudulent misrepresentation." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648-49 (2008).

1.   <u>Plaintiffs plead mail and wire fraud with sufficient 9(b) specificity</u>.

While allegations of mail and wire fraud must be pled with particularity, the Third Circuit emphasizes that "focusing exclusively on [Rule 9(b)'s] particularity language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (quotation marks omitted), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiffs must plead "the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged," but allegations of "date, place or time" are not required. *Id.* "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation in their allegations of fraud." *Id.*; *accord Lum*, 361 F.3d at 224; *Grant v. Turner*, 505 Fed. Appx. 107, 111 (3d Cir. 2012). District courts in this Circuit routinely apply this flexible standard in assessing the adequacy of fraud allegations. *See, e.g., Prudential Ins. Co. of Am. V. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 606-07 (D.N.J. 2014); *Indianapolis Life Ins. Co. v. Hentz*, 2008 WL 4453223, at *11 (M.D. Pa. Sept. 30, 2008); *Westlake Plastic Co. v. O'Donnell*, 182 F.R.D. 165, 169-70 (E.D. Pa. 1998). Moreover, where "transactions are numerous and take place over an extended period

of time, less specificity in pleading fraud is required." *Kaiser Found. Health Plan, Inc. v. Medquist, Inc.*, 2009 WL 961426, at *6 (D.N.J. Apr. 8, 2009) (citation and quotation omitted); *In re Sunrise Secs. Litig.*, 793 F. Supp. 1306, 1312 (E.D. Pa. 1992) (same).

Plaintiffs have alleged predicate acts of mail and wire fraud with the requisite particularity. United acknowledges that "the Complaint recounts in some detail various representations that Data iSight . . . allegedly made on its website." Def. Mem. at 8. But it contends that the fraud allegations fail nonetheless, because they do not "attribute Data iSight's asserted misrepresentations to any specific United Defendant." Def. Mem. at 7-9. United overlooks the numerous allegations that the RICO Defendants expressly direct providers to Data iSight, which then, at Defendants' behest, makes materially false and misleading representations to the providers regarding reimbursement computations.[5] Compl. ¶¶ 114-138.

Plaintiffs allege that "non-participating providers receive an Explanation of Benefits form ("EOB") from Defendants with 'IS'[6] in the 'Remark/Notes' column" including via the wires and interstate mail. *Id.* ¶ 114. United's EOBs affirmatively represent to Plaintiffs that "this service has been reimbursed using Data iSight,

---

[5] Additionally, Data iSight's false statements would be attributed to the RICO Defendants for purposes of Plaintiffs' RICO conspiracy claim. *See* Section II, *infra*.

[6] "IS" apparently indicates that reimbursement amounts were determined by Data iSight.

which utilizes cost data if available (facilities) or paid data (professionals)," and direct Plaintiffs to "contact Data iSight" if providers have any questions about the reimbursements. *Id.* ¶¶ 118, 136. But "RICO Defendants and Data iSight do not state, on the face of the EOBs, or anywhere else, any reason for the dramatic cut." *Id.* ¶ 117.

The Complaint further explains that providers—who have been instructed by Defendants to contact Data iSight with reimbursement questions—can access a Data iSight "provider portal" through the use of internet wires. *Id.* ¶ 138. In that portal, "Data iSight describes its 'methodology' for reimbursement determinations as [being] 'calculated using paid data from millions of claims . . . . The Data iSight reimbursement calculation is based upon standard relative value units where applicable for each CPT/HCPCS code, multiplied by a conversion factor." *Id.* But, as alleged, these statements are designed to provide a false impression that Data iSight's calculations "are tied to external, objective data," whereas, in reality, the reimbursement rates "match the rate[s] threatened by RICO Defendants in 2018 and are whatever RICO Defendants want, and direct Data iSight to allow." Compl. ¶¶ 137, 140-41. The RICO Defendants carried out this fraudulent scheme through use of interstate wires and the U.S. Postal Service. *Id.* ¶¶ 162-169.

Moreover, the Complaint alleges that the fraudulent scheme is perpetrated over the interstate telephone wires. When Plaintiffs challenged the false claims of

the RICO Defendants and Data iSight over the phone, Data iSight conceded that the amount on the EOBs from United are not calculated from an independent, third party database but are instead a predetermined amount from United itself. *Id.* ¶¶ 124, 164. The Complaint then details numerous and various examples of the specific representations made by United when transmitting EOBs via the wire and interstate mail, the falsity of the representations made in those various examples, and the continued misrepresentations made by the RICO Defendants and Enterprise when challenging the artificially low reimbursement rates. *See, e.g., id.* ¶¶ 142-159.

These allegations detail the scheme whereby Data iSight functions as United's mouthpiece, propagating false information at United's behest and for United's benefit. United falsely represents that its reimbursements are based on objective, independent data and expressly sponsors and/or adopts the false statements of Data iSight every time it refers Plaintiffs to Data iSight to purport to justify a payment. These allegations allege "some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension," *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978) (cited by Defendants), and are more than sufficient to plead mail and wire fraud predicates.[7]

---

[7] United contends that Plaintiffs "cannot lump the defendants they have named together," and "must distinguish the alleged conduct of particular defendants." Def. Mot. at 7 ¶ 19. But Plaintiffs allege that the RICO Defendants include UnitedHealth Group, Inc., United HealthCare Services, Inc., UnitedHealthcare, Inc., and UnitedHealth Networks, Inc. (Compl. ¶ 96), and that these RICO Defendants sent

*Comercializadora Recmaq Limitada v. Hollywood Auto Mall, LLC*, 2013 WL 2248140, at *5 (S.D. Cal. May 20, 2013) (allegation that defendant ratified a separate party's false representation sufficient to state a fraud claim).

    2.   <u>Plaintiffs' mission to treat all patients does not defeat allegations of fraud</u>.

United further contends that the mail and wire fraud allegations substantively fail because Plaintiffs' statutory obligation to treat all patients who present in the emergency room "renders implausible any suggestion that United deceptively misrepresented its rates to Plaintiffs for purposes of inducing them to provide [medical care]." Def. Mem. at 11-12 (italics omitted). Put simply, United's position is that Plaintiffs' mission and obligation to treat all members of the public without discriminating based on the patient's ability to pay immunizes United from liability for its dishonesty. This spurious argument is belied by the law and by the substance of Plaintiffs' actual allegations.

Plaintiffs have not alleged that the fraudulent statements were intended to induce Plaintiffs to render care to United's members, nor were United's fraudulent

---

EOBs (Compl. ¶¶ 114, 116-17) and are therefore each responsible for the direct and adoptive false statements contained therein. In any event, courts less rigorously apply the Rule 9(b) standard where a plaintiff alleges that closely related corporate entities have committed fraud but has no reasonable means, at the pleading stage, to attribute the specific fraudulent statements to the specific entities. *MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 422 (D.Del. 2004) (finding relaxation of the 9(b) standard justified where plaintiff unable to plead which of the related corporate entities made fraudulent statements, because a contrary holding would "creat[e] for sophisticated defrauders a method by which to conceal their fraudulent acts").

statements required by law to induce any such reliance. As the Complaint alleges, the statements falsely represent that United's reimbursement calculations are based upon independent analyses of objective market data. Compl. ¶¶ 89-90, 112-113, 137, 140-41. United's purpose in propounding the statements is to facilitate its preconceived scheme to dramatically slash the reimbursements it pays to Plaintiffs. United's statements are designed to aid in that endeavor by creating the false appearance that the reduced rates at which it has arbitrarily chosen to reimburse Plaintiffs are consistent with the prevailing usual and customary rates in the market, and, as a result, that payment of those rates satisfies United's obligation to pay reasonable rates. But contrary to United's contention, Def. Mem. at 12, Plaintiffs are not required to demonstrate that the fraudulent statements were "reasonably calculated to deceive Plaintiffs into changing their position."[8] *Bridge*, 553 U.S. at 648-49 ("one can conduct the affairs of a qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation"); *Neder*, 527 U.S. at 24-25 ("the common-law requirements of 'justifiable reliance' and 'damages,' for example, plainly have no place in the federal fraud statutes"). A violation merely requires the existence of a plan to deprive Plaintiffs of money by means of false or fraudulent representations. *AMA Realty,* 2017 WL 6728641, at *4.

---

[8] In any event, the fraudulent statements were clearly intended to induce Plaintiffs into "changing their position" in the network negotiations and to hamper their ability to recover the full amounts due for services rendered.

The Complaint's detailed allegations unquestionably present such a plan.

3. <u>United's warnings of a rate reduction do not absolve it of liability</u>.

United's argument that there was no fraud because it provided Plaintiffs with advance notice of its planned rate reductions is equally without merit. Def. Mot. at 12. The fraud alleged in the Complaint consists of repeated false representations that the reduced rates were calculated objectively, not concealment of the reductions themselves.

Accordingly, Plaintiffs have properly alleged a pattern of racketeering activity predicated on mail and wire fraud.

## C. The Complaint Properly Alleges that Defendants Participated in or Conducted the Affairs of a RICO Enterprise.

United argues that Plaintiffs have not adequately alleged that RICO Defendants conducted or participated in the conduct of the Enterprise. Again, United's arguments ignore the clear allegations and applicable legal standard. "To conduct or participate" in the affairs of a RICO enterprise, a defendant must, in some capacity, direct the affairs of the enterprise. *Reves v. Ernest & Young,* 507 U.S. 170, 184 (1993); *Clark v. Conahan*, 737 F. Supp. 2d 239, 269 (M.D. Pa. 2010). If parties "band together to commit violations they cannot accomplish alone then they cumulatively are conducting the association-in-fact *enterprise's* affairs, and not simply their *own* affairs." *In re Ins. Brokerage,* 618 F.3d at 378 (emphasis in original) (citations, bracketing, ellipsis, and quotations omitted).

Plaintiffs allege that the Enterprise is comprised of United and third-party entities, including Data iSight, that have joined together to falsely claim to provide transparent, objective, and geographically-adjusted determinations of reimbursement rates.  Compl. ¶ 105 ("RICO Defendants and Data iSight agreed to, and do, manipulate reimbursement rates and control allowed payments to Plaintiffs through acts of the Enterprise."); *id.* ¶ 107 ("[T]he Enterprise falsely claims to provide transparent, objective, and geographically-adjusted determinations of reimbursement rates through the use of Data iSight").  This scheme to defraud is concealed through false statements contained in EOBs provided by United to Plaintiffs and through information on Data iSight's website purporting to legitimize the unlawful conduct.  *Id.* ¶¶ 108, 109, 141.  As alleged, the United Defendants are the actors driving the unreasonable rates.  *Id.* ¶¶ 80-94.

These allegations sufficiently detail United's conduct of the Enterprise.  *See, e.g., In re Ins. Brokerage,* 618 F.3d at 378 ("The allegations that defendant broker Marsh directed the placement of insurance contracts and solicited rigged bids from insurers plausibly imply that Marsh 'participated in the operation or management of the enterprise itself.'") (citations omitted).  As alleged, United would not be able to operate its deceptive scheme absent Data iSight's purported functioning as a third-party supplier of transparent, market-based benchmark data.  Data iSight is the

conduit through which United seeks to color its arbitrary, deficient payments with the false appearance of good faith objectivity.  *See id.*[9]

### D.    Plaintiffs Were Injured by Reason of Defendants' Unlawful Racketeering.

The Supreme Court has interpreted § 1964(c)'s "by reason of" language to mean that the defendant's RICO violation must be the proximate cause of the civil plaintiff's injury.  *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 266-68 (1992). To satisfy this requirement, the plaintiff must allege "some direct relation between the injury asserted and the injurious conduct alleged." *Id.*  Here, Plaintiffs allege, *inter alia*, that: "The purpose of, and the direct and proximate result of the above alleged Enterprise and scheme was, and continues to be, to unlawfully reimburse Plaintiffs at unreasonable rates, to the harm of Plaintiffs, and to the benefit of the Enterprise."  Compl. ¶ 173; *see also id.* ¶¶ 180-82.  These allegations are more than sufficient.[10]

_____

[9] United's supporting authority is inapposite.  The court in *In re Aetna UCR Litig.* merely held that providing goods or services to an alleged RICO enterprise is insufficient to establish RICO liability.  2015 WL 3970168, at *29 (D.N.J. June 30, 2015).

[10] United also contends that Plaintiffs lack standing because Plaintiffs fail to establish an express assignment of RICO claims.  Def. Mot. ¶ 15.  This is incorrect: the existence of express assignments was, in fact, pled.  Compl. ¶¶ 26-27 ("The hospitals where Plaintiffs provide emergency medical services routinely secure signed consents for treatment and assignments of benefits from each patient or the patient's authorized representative.  These assignments of benefits state that the

United contends that Plaintiffs cannot establish proximate causation because they did not rely on Defendants' fraudulent misrepresentations.[11] But this argument is directly contrary to controlling law. The Supreme Court has expressly held that: "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Bridge*, 553 U.S. at 661. That is, "first-party reliance [is not] necessary to ensure that there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy . . . proximate-cause principles." *Id.* at 657-58; *accord Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, 2018 WL 3585069, at \*5 (E.D. Pa. July 26, 2018) (citing *Bridge* and observing that "reliance by the Plaintiff on a fraudulent wire or mailing [] is not an element of a civil RICO claim premised on mail fraud"), *aff'd sub nom. Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, 2019 WL 5395567 (3d Cir. Oct. 22, 2019); *Impala Platinum Holdings Ltd.*, 2016 WL

---

patient assigns to the providers for the medical service all rights to benefits under her insurance, including the rights to claims and judgments").

[11] United argues (1) that Plaintiffs, as emergency healthcare providers, are legally obligated to provide emergency services to patients, regardless of their method of payment and therefore, "any representation made to Plaintiffs concerning United's payment rates could not have affected their provision of services," Def. Mem. at 6-7, and (2) that United provided advance notice that out-of-network payment rates were expected to drop, which, they argue, purportedly breaks any causal chain between underpayment injuries and the alleged fraudulent statements, *see* Def. Mem. at 7. As set forth in Section I.B, *supra*, both arguments are without merit.

8256412, at *10 (E.D. Pa. Sept. 16, 2016) ("[O]ne can conduct the affairs of a qualifying enterprise through a pattern of such acts [e.g., mail fraud] without anyone relying on a fraudulent misrepresentation . . . . Moreover, a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations.").[12]  As such, United's reliance argument fails.

The Complaint's clear allegations leave no doubt that the injury alleged to Plaintiffs' business stemmed directly from the conduct complained of: United's corrupt use of the Enterprise to depress market rates of reimbursement through a pattern of mail and wire fraud.  Indeed, there is no question that Plaintiffs were the "primary and intended victims of [Defendants'] scheme to defraud."  *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 645 (3d Cir. 2015).  As such, Plaintiffs have adequately alleged proximate causation.[13]

---

[12] While *Bridge* does not require first-party reliance, lower federal courts have been divided over whether the pleading requires *some* reliance by a third party.  *Compare Impala*, 2016 WL 8256412, at *10 (noting that the Supreme Court "did not hold that it was a requirement . . . particularly at the pleading stage" to "establish at least third-party reliance in order to prove causation"), *with Devon Drive Lionville*, 2018 WL 3585069 at *5-6 (noting that "[t]he Supreme Court [] was less clear on whether some other type of reliance allegation remained crucial to RICO standing," but finding "persuasive" those that concluded that "some form" of reliance is needed).  But even assuming *arguendo* that third-party reliance is required, the allegations establish such third-party reliance. Plaintiffs explicitly allege that United emphasized its out-of-network coverage for emergency services "inducing members to purchase their products and rely upon those representations." Compl. ¶ 36; *see also id.* ¶ 136.

[13] United's reliance on *Hemi Grp., LLC v. City of New York* is misplaced.  There, the plaintiff's alleged injury (non-payment of taxes by customers), was too attenuated

## II.     The Complaint States a Cause of Action for RICO Conspiracy.

Section 1962(d) prohibits conspiracies to violate the other § 1962 subsections. United argues that because (in its view) Plaintiffs fail to allege a substantive RICO violation, the RICO conspiracy claim consequently fails.  Def. Mem. at 12-13 (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993)).  United misunderstands the nature of conspiracy liability and overlooks controlling law. Relying upon the Supreme Court's decision in *Salinas v. United States*, 522 U.S. 52 (1997), the Third Circuit has explicitly held that "§ 1962(c) liability is not a prerequisite to § 1962(d) liability." *Smith v. Berg*, 247 F.3d 532, 537 (3d Cir. 2001). Rather, "a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." *Id.* at 538.  The defendant "need not himself commit or agree to commit predicate acts," and must simply "adopt the goal of furthering or facilitating the criminal endeavor." *Id.* at 537.  All that is necessary "is that the conspirators share a common purpose." *Id.*; *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 316 (D.N.J. 2005).

---

from the alleged fraud (defendant's failure to submit customer information to the state to calculate the tax).  559 U.S. 1, 9 (2010). This attenuation does not exist here, where Plaintiffs are the intended victim of, and Plaintiffs' injuries are directly caused by, Defendants' fraud.

As explained above, Plaintiffs have properly pled a § 1962(c) claim. But even if the Court were to find that the substantive RICO allegations fail as to any of the RICO Defendants, Defendants would still face conspiracy liability. Plaintiffs have indisputably alleged a conspiracy consisting of the RICO Defendants, Data iSight and others, and conduct committed by the conspirators which in aggregate amounts to RICO predicated upon mail and wire fraud. Such allegations sufficiently state a § 1962(d) claim. *See Brock v. Thomas*, 782 F. Supp. 2d 133, 142-43 (E.D. Pa. 2011).[14]

## III.   Plaintiffs' State Law Claims are Not Preempted by ERISA.

In addition to the federal RICO claims, Plaintiffs assert independent state-law claims for breach of implied-in-fact contract and unjust enrichment. Plaintiffs' claims are brought in their own right,[15] seeking recovery based on legal obligations owed by United to Plaintiffs entirely independent of ERISA plans. The state law claims do not involve a dispute over Plaintiffs' *right* to payment—indeed, United

---

[14] *Lightning Lube* and similar cases stand for the obvious proposition that "a § 1962(d) claim must be dismissed if the complaint does not adequately allege an endeavor which, if completed, would satisfy all of the elements of a substantive RICO offense." *In re Brokerage*, 618 F.3d at 373. These cases do not hold that § 1962(d) liability requires a substantive RICO violation *committed by the defendant conspirator*, or even that the substantive offense have been completed. *Id.*

[15] For the state law claims, Plaintiffs specifically allege that these claims are not based on "assignment of benefits" and instead, solely concern the rate of payment rather than a right to payment. Compl. ¶¶ 43-46.

conceded Plaintiffs' entitlement to reimbursement by actually reimbursing the claims. Instead, Plaintiffs contest the *rate* of payment, based upon United's obligation imposed by Pennsylvania common law (not by the terms of the ERISA plans) to pay reasonable rates for Plaintiffs' services. Plaintiffs' state law claims simply do not arise under ERISA, do not seek benefits due under ERISA plans, and do not challenge, or even affect, United's administration of ERISA plans. As explained below, neither of ERISA's two preemption doctrines — "conflict" and "complete" preemption — bars such allegations. Accordingly, the Court should deny the Motion.

### A.    The State Law Claims Are Not Conflict Preempted

ERISA conflict preemption is derived from § 514(a), which directs that "this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan " 29 U.S.C. § 1144(a). Courts applying this provision should avoid "uncritical literalism," recognizing that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course . . . ." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995). Rather, courts must assume "that the historic police powers of the States were not to be superseded by [federal law] unless that was the clear and manifest purpose of

Congress." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997).

The Supreme Court has limited the parameters of § 514(a) preemption to two categories of state laws. *Gobeille v. Liberty Mut. Ins. Co.*, 136 S.Ct. 936, 943 (2016). Those categories are: (1) laws "with a reference to ERISA plans," which include laws which "act[ ] immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation," and (2) laws with "an impermissible connection with ERISA plans, meaning a state law that governs a central matter of plan administration or interferes with nationally uniform plan administration." *Id.*

Plaintiffs' state law claims do not fall within either of the *Gobeille* categories. Here, Plaintiffs allege that Plaintiffs and United have an implied-in-fact contract, which obligates United, under Pennsylvania law, to pay Plaintiffs reasonable compensation (Compl. ¶¶ 189-202), and that Pennsylvania law of unjust enrichment obligates United to pay Plaintiffs the reasonable value for their services. *Id.* ¶¶ 203-216. Plaintiffs have not pled claims for ERISA benefits. "[Plaintiffs are] the master[s] of [their] complaint and ha[ve] chosen to plead [their] claims based on the existence of an implied contract." *N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, 2017 WL 659012, at *5 (D.N.J. Feb. 17, 2017), *R&R adopted by* 2017 WL 1055957 (D.N.J. Mar. 20, 2017). As the court aptly concluded in *Emergency*

*Physicians of St. Clare's v. United Health Care*, "the fact that there is no contract between the parties in this case, if true, would not convert Plaintiff's claims for additional reimbursements into claims for coverage or the denial of benefits." 2014 WL 7404563, at *6 (D.N.J. Dec. 29, 2014).

In *Glastein v. Aetna, Inc.*, a district court in this Circuit determined that an out-of-network healthcare provider's analogous state law claims against an ERISA plan administrator were not conflict preempted. 2018 WL 4562467, at *2-3 (D.N.J. Sept. 24, 2018). The *Glastein* court's analysis is well-reasoned and instructive:

> The state laws at issue here . . . neither 'refer to' nor have an 'impermissible connection with' an ERISA plan . . . . [T]he Complaint does not claim that Plaintiff was a contracting party to an ERISA plan. It does not allege that payment is due to him according to the terms of an ERISA plan, or even that any relevant ERISA plan provides reimbursement rates for the out-of-network services provided. To the contrary, the Complaint states that Plaintiff is entitled to recover $209,000 because that amount 'represents reasonable and normal charges' under an implied-in-fact contract. The Complaint's factual assertions . . . do nothing to suggest that the claims brought in this case will require examination of an ERISA plan. The state laws here therefore do not 'refer to' an ERISA plan.
>
> Second, these laws do not have an 'impermissible connection with' an ERISA plan. The central purpose of ERISA is to protect plan participants and beneficiaries . . . . As several Circuit Courts have held, claims brought by a provider against an insurance company do not implicate ERISA's goals of protecting participants and beneficiaries. Such claims therefore do not have an 'impermissible connection with' an ERISA plan, and are not preempted.

*Id.* (citations omitted).

As in *Glastein*, Plaintiffs' state law claims neither seek recovery under an ERISA plan, require examination of an ERISA plan, nor implicate any discernible goal of ERISA.[16]   Accordingly, Plaintiffs' state-law claims are not conflict preempted. *See id.; Comprehensive Spine Care PA v. Oxford Health Ins. Co.*, 2018 WL 6445593, at *5 (D.N.J. Dec. 10, 2018) (approving of *Glastein* and concluding that "at the motion-to-dismiss stage, the Court cannot find ERISA preemption where nothing in the Amended Complaint directs the Court to ERISA or an ERISA plan"); *Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*, 2015 WL 1954287, at *10 (E.D. Pa. Apr. 30, 2015) (holding that the out-of-network provider claims for unjust enrichment and breach of contract were not preempted by ERISA because the plaintiff's state law claims were independent of the ERISA beneficiaries' rights under any ERISA plan); *Jewish Lifeline Network, Inc. v. Oxford Health Plans (NJ),*

---

[16] United argues that the state law claims threaten to disrupt nationally uniform plan administration by "requir[ing] plans to apply different methodologies and/or different rates to the same type of claim depending upon the state in which the member received care."  Def. Mem. at 17.  This argument is curious, given the allegations of the Complaint that United (mis)represented that its payments were *not* nationally uniform but were adjusted to account for differences in regional economics.  Nevertheless, the Court need not address this contradiction, as other courts have rejected United's argument out of hand, finding that "state law claims brought by health care providers against plan insurers too tenuously affect ERISA plans to be preempted." *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994); *Glastein*, 2018 WL 4562467, at *3 n.4 (collecting cases); *Rocky Mountain Holdings LLC v. Blue Cross and Blue Shield of Fla., Inc.*, 2008 WL 3833236, at *5 (M.D. Fla. Aug. 13, 2008) (collecting cases); *Med. & Chirurgical Facility of the State of Md. v. Aetna U.S. Healthcare, Inc.*, 221 F. Supp. 2d 618, 619-20 (D. Md. 2002) (collecting cases).

*Inc.*, 2015 WL 2371635, at *3 (D.N.J. May 18, 2015) (ERISA preemption "does not foreclose a plaintiff from pleading a state law claim based on a legal duty that is independent from ERISA or an ERISA-governed plan").

The cases United relies upon are inapposite.  Several of the cases address complete preemption under § 502(a) of ERISA, rather than conflict preemption under § 514(a).[17] Others involve claims expressly seeking ERISA benefits and/or brought directly by plan members rather than third-party medical providers.[18] These cases do not hold that § 514(a) preempts state law claims brought by a third-party medical provider challenging rates of reimbursement.  Accordingly, the Court should reject Defendants' conflict preemption defense.

## B.    Plaintiffs' State Law Claims Are Not Completely Preempted

Complete ERISA preemption, a doctrine distinct from conflict preemption, is derived from ERISA's civil enforcement provision, § 502(a).  *See* 29 U.S.C. §

---

[17] *Montvale Surgical Ctr. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2012 WL 6554404, at *3 (D.N.J. Dec. 14, 2012); *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, 2011 WL 4737067, at *8 (D.N.J. June 30, 2011); *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 3623832, at *2-3 (D.N.J. June 29, 2017); *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, 2011 WL 4737063, at *2-3 (D.N.J. Oct. 6, 2011).

[18] *Riordan v. Optum & Oxford Health Plan*, 2018 WL 3105426, at *1-3 (D.N.J. June 25, 2018) (claims brought by plan members challenging benefit denials); *Palmeri v. Citadel Broad.*, 2017 WL 3130282, at *1-3 (M.D. Pa. July 24, 2017) (same); *Zapiach v. Empire Blue Cross Blue Shield*, 2018 WL 1838017, at *1-3 (D.N.J. Apr. 17, 2018) (provider expressly asserting claims under ERISA).

1132(a).  Courts in the Third Circuit employ a two-part test to determine whether claims are completely preempted.  Under this test, preemption exists only where: (1) the plaintiff could have brought its claims under § 502(a)(1)(B); and (2) no other independent legal duty supports the claims.  *Pascack Valley Hosp. v. Local 464A Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004).  The first prong of the "*Pascack* test" is further disaggregated into two subparts: (a) whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B); and (b) whether the plaintiff's actual claim could be construed as a colorable claim for benefits.  *N. Jersey Brain & Spine Ctr. v. Multiplan, Inc.*, 2018 WL 6592956, at *5 (D.N.J. Dec. 14, 2018); *Comprehensive Spine*, 2018 WL 6445593, at *2.  Neither *Pascack* prong is satisfied here, and, as a result, Plaintiffs' claims are not completely preempted.

Regarding prong 1(a), only "participant[s]" and "beneficiar[ies]" of ERISA plans enjoy standing to assert claims for benefits.  29 U.S.C. § 1132(a)(1).  Plaintiffs, as third-party medical providers, do not qualify.  *See E. Coast Advanced Plastic Surgery v. AmeriHealth*, 2018 WL 1226104, at *3 (D.N.J. Mar. 9, 2018) ("Because Plaintiff is a third-party provider and does not attempt to assert the rights of [patient], Plaintiff does not have standing to bring suit under § 502(a)."); *MHA, LLC v. Empire Healthchoice HMO, Inc.*, 2018 WL 549641, at *3 (D.N.J. Jan. 25, 2018) (same); *Comprehensive Spine*, 2018 WL 6445593, at *3 (same).  Although Plaintiffs

received assignments of benefits from some patients, their state law claims explicitly seek recovery under obligations owed directly to Plaintiffs.  Compl. ¶ 43.  As such, those assignments would not confer standing.  *See N. Jersey Brain & Spine Ctr. v. Aetna*, 2017 WL 659012, at \*4 ("[T]he mere existence of an assignment does not convert [provider's] state law claim for breach of contract into a claim to recover benefits under the terms of an ERISA plan."); *MHA*, 2018 WL 549641, at \*3 n.3 (same); *Huntingdon Valley Surgery Ctr.*, 2015 WL 1954287, at \*10 (holding that the plaintiff out-of-network provider's claims for unjust enrichment and breach of contract were not preempted by ERISA notwithstanding that the provider had also received assignments of benefits from ERISA plan beneficiaries since the provider's state law claims were independent of the beneficiaries' rights under an ERISA plan).

Prong 1(b) is equally fatal to United's complete preemption defense.  The Third Circuit has explicitly distinguished between claims asserting a right to payment of ERISA benefits and those challenging the rate of payment, finding only right to payment claims are preempted.  *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 177-78 (3d Cir. 2014).  District courts routinely apply *CardioNet* in holding that state law claims by third-party medical providers challenging rates of payment are not preempted by § 502(a).  *See, e.g., N. Jersey Brain & Spine Ctr.*, 2018 WL 6592956, at \*7; *E. Coast Advanced Plastic Surgery*, 2018 WL 1226104, at \*3; *MHA*, 2018 WL 549641, at \*3; *Comprehensive Spine*, 2018 WL 6445593, at

*3; *St. Clare's*, 2014 WL 7404563, at *5.  Because Plaintiffs challenge the rates of reimbursement, rather than the right to reimbursement (Compl. ¶ 44), the complete preemption defense fails.

Although Prong 1 is dispositive here, Prong 2—which looks to whether claims are supported by an "independent legal duty"—is likewise unsatisfied.  "A legal duty is independent if it is not based on an obligation under an ERISA plan, or it would exist whether or not an ERISA plan existed."  *N.J. Carpenters and the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014).  As noted, Plaintiffs do not seek recovery of ERISA benefits.  Instead, the state law claims are premised upon obligations imposed by state common law, owed directly to Plaintiff medical providers (not to the patient plan members).  Such claims are entirely independent of the ERISA plans.  *Christ Hosp. v. Local 1102 Health and Benefit Fund*, 2011 WL 5042062, at *4 (D.N.J. Oct. 24, 2011) (no independent legal duty where claims challenged rates of reimbursement, because claims "depend[ed] on the operation of a third-party contract" between plaintiff medical provider and defendant ERISA plan, rather than on the terms of the ERISA plan); *N. Jersey Brain & Spine Ctr.*, 2018 WL 6592956, at *8 (same).

Accordingly, the Court should reject United's complete preemption defense.[19]

---

[19] Likewise, because Plaintiffs have demonstrated that the state law claims are based upon legal obligations independent of the ERISA plans and are not preempted, United's challenge to the jury-trial demand fails.

**IV.     The Complaint States a Cause of Action for Unjust Enrichment.**

Under Pennsylvania law, a plaintiff has a cause of action against another party who "receives unjust enrichment at the expense of" the plaintiff.   *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 507 (Pa. Super. 2003), *cert. denied* 577 Pa. 724 (2004) (citation omitted).   In determining whether the doctrine applies in a particular case, courts "focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched."   *Id.*   The elements of a claim for unjust enrichment are a benefit conferred by plaintiff, appreciation of the benefits by the defendant, and "acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."   *Id.*   "*[M]ost significant*" to the analysis is "*whether the enrichment of the defendant is unjust*[.]" *Id.* (emphasis added).   Thus, the Court's inquiry "must focus on whether [the defendant] has been unjustly enriched and a benefit conferred on it under circumstances that make it inequitable for it to retain the benefit without additional payment."   *Id.*

Pennsylvania courts have long held that out-of-network healthcare providers can maintain a cause of action for unjust enrichment against a health insurer who fails to reimburse the provider the reasonable value of the services rendered to the insurer's members.   *See, e.g.*, *id.*; *Huntingdon Valley Surgery Ctr.*, 2015 WL 1954287, at *10  (holding that an out-of-network healthcare provider stated a cause

of action for unjust enrichment against an insurer where the provider alleged that it rendered medical services to the insurer's members and that the insurer failed to pay a reasonable value for such services).

For example, in *Temple*, the Pennsylvania Superior Court held that an out-of-network healthcare provider of emergency services had established at trial a cause of action for unjust enrichment against the defendant health insurer, because the plaintiff healthcare provider "was compelled under federal law to provide services to individuals covered" by the defendant insurer, while the defendant insurer "did not have the ability to prevent its members from seeking emergency treatment at the [plaintiff]." 832 A.2d at 507. "As a result, the parties virtually were compelled to operate in this manner[.]" *Id.* Therefore, "equitable principles are . . . particularly appropriate to apply." *Id.* The *Temple* court observed that the defendant insurer's contention that it could avoid liability in unjust enrichment while only "pay[ing] a fraction of the value of the benefit supplied by health care providers" is "absurd," "unreasonable," and "inequitable." *Id.* at 507-08. The court added that "[s]ince both parties were legally required to act as they did, commensurately, neither party should be provided a windfall." *Id.* at 508. Therefore, because "there is no express

agreement to pay, the law implies a promise to pay a reasonable fee for a health provider's services." *Id.* at 508.[20]

Here, Plaintiffs clearly stated a cause of action for unjust enrichment under Pennsylvania law.   Plaintiffs rendered emergency medical services as out-of-network providers to United's Members, which were often life-saving.   Compl. ¶¶ 19, 40, 206.   Under federal and state law, Plaintiffs were required to provide such care to United's members.   *Id.* ¶¶ 20, 21, 23, 206.   United covers its members' receipt of emergency services from out-of-network providers, such as the Physicians, as it is legally obligated to do.   *Id.* ¶¶ 34-37; *see also* 40 Pa. C.S. § 3042; 42 U.S.C. § 300gg-19a(b).   United cannot prevent its members from obtaining emergency care

---

[20] Not surprisingly, United fails to cite any Pennsylvania cases to support its argument that an out-of-network providers cannot bring a claim for unjust enrichment.   As noted above, this is manifestly not the law in Pennsylvania.   In any event, other cases outside of Pennsylvania recognize a healthcare provider's right to maintain a cause of action for unjust enrichment against an insurer who fails to reimburse the provider at a reasonable rate for medical services rendered to the insurer's members, including in cases involving United.   *See, e.g.*, *Nat'l Labs., LLC v. United Healthcare Grp., Inc.,* 2018 U.S. Dist. LEXIS 58328 (S.D. Fla. Apr. 3, 2018) (holding that the plaintiff, an out-of-network healthcare provider, stated a cause of action for unjust enrichment against United by rendering medical services to United's members, and rejecting United's argument that the rendition of such services did not confer a benefit on United); *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289, 1293 (S.D. Fla. 2019); *River Park Hosp., Inc. v. BlueCross BlueShield of Tenn. Inc.*, 173 S.W.3d 43 (Tenn. Ct. App. 2002); *N.Y. City Health & Hosps. Corp. v. WellCare of N.Y., Inc.*, 937 N.Y.S.2d 540 (N.Y. Sup. Ct. 2011); *El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.,* 683 F. Supp. 2d 454 (W.D. Tex. 2010); *Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*, 2013 WL 1314154 (E.D. Ky. Mar. 28, 2013).

from Plaintiffs.   Compl. ¶ 207.   United understands and acknowledges that its members will seek emergency treatment from non-participating providers and that United is obligated to pay for those services.   *Id.* ¶¶ 45-46.   In providing medically necessary emergency care to United's Members, Plaintiffs materially benefited United by discharging United's obligations to its Members to ensure that they receive medically necessary health care services.   *Id.* ¶¶ 212-14; *accord Nat'l Labs., LLC,* 2018 U.S. Dist. LEXIS 58328.   Indeed, for all of the claims at issue in this action, United adjudicated the claims as covered and determined the claims to be allowed claims, payable by United to Plaintiffs.   Compl. ¶ 41.   However, United has failed to reimburse Plaintiffs at a reasonable rate for the emergency services that Plaintiffs provided to its members.   Compl. ¶¶ 41, 211.   As in *Temple*, United and Plaintiffs are compelled to operate together as a result of their concomitant legal duties.   As such, in order to prevent unjust enrichment to United, Pennsylvania law obligates United to reimburse Plaintiffs at a reasonable rate for the emergency services rendered to United's members.

## V.   The Complaint States a Cause of Action for Breach of an Implied-in-Fact Contract.

Under Pennsylvania law, a contract implied-in-fact "arises when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." *Oxner v. Cliveden Nursing & Rehab. Ctr. PA,*

*L.P.*, 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015) (citation omitted).  The law "impli[es] . . . a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary."  *Id.* (citation and quotations omitted).  As such, "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service."  *Id.* (citation and internal quotations omitted).

The Complaint clearly states a cause of action for breach of an implied-in-fact contract.  As discussed, Plaintiffs are obligated by federal and state law to provide emergency care to United's Members, and United is concomitantly obligated by federal and state law to cover and pay for such emergency services rendered by out-of-network providers like the Plaintiffs without prior authorization.   Compl. ¶¶ 20, 21, 23, 25, 195, 206, 207.   Pursuant to these reciprocal legal obligations, for years and at all times relevant, notwithstanding the absence of an express agreement, the parties mutually understood that Plaintiffs would provide medically necessary emergency services to United's members and that United would reimburse the Plaintiffs at the rate compelled by common law, *i.e.,* a reasonable rate for such services. *See id.* ¶¶ 25, 46, 67, 68, 146, 190, 191, 195.  Consistent with this mutual understanding, for years and at all times material, Plaintiffs have continued to render medically necessary emergency services to United's Members, and United has

consistently processed and adjudicated the Physicians' claims for reimbursement for such services and determined them to be medically necessary, covered, and payable. *Id.* ¶¶ 41, 191.  Indeed, in recognition that it must pay a reasonable rate for Plaintiffs' services, United has purported to utilize rate data from a purportedly independent benchmark (Data iSight), which purports to ascertain a "fair" reimbursement based upon "amounts generally accepted by providers as full payment for services," while accounting for geographic differences in certain economic factors, in an attempt to cloak United's deficient reimbursements in a façade of objectivity and reasonableness. *Id.* ¶¶ 107-108, 111-112, 150, 179, 187.

These circumstances are such that an implied-in-fact contract can be inferred between United and Plaintiffs under which United is obligated to pay the reasonable value of the emergency services Plaintiffs render to United's members.  *See id.* ¶ 196; *Oxner*, 132 F. Supp. 3d at 649.  Only recently has United been reimbursing Plaintiffs for such out-of-network services at a rate less than the reasonable rate. Having failed to reimburse Plaintiffs at a reasonable rate for the services rendered, *see* Compl. ¶¶ 41, 200-202, United has breached the parties' implied contract.

United argues that an insurer and an out-of-network emergency services provider cannot enter into an implied-in-fact contract on the theory that there can be no exchange of consideration in such circumstances since the emergency provider

was legally obligated to provide the emergency care rendered.[21]   Under this flawed

logic, express contracts between insurers and providers of emergency services would

likewise be unenforceable for a purported lack of consideration, but that is not the

case.   Plaintiffs' provision of emergency medical services to United's members and

concomitant discharging of United's responsibilities to its members to cover such

services constitute consideration for United's payment for those services.   Providers

of emergency medical services are entitled to compensation for their services in

accordance with the rates agreed upon explicitly or implicitly with insurers of the

patients they treat.

Similarly, United's argument that the Complaint does not detail the specific

moments of an offer and an acceptance is misguided.   "An offer and acceptance need

not be identifiable" for there to be an enforceable contract implied-in-fact, nor does

---

[21] The sole authority United cites for this theory is a single, unpublished order of a
Pennsylvania trial court.   That case is inapposite.   There, unlike United, the
defendant City of Philadelphia was not the health insurer of the patients (who were
pre-arraignment detainees) who received the emergency medical care the plaintiff
rendered.   And unlike United, the City of Philadelphia explicitly did not have a
reciprocal obligation to *pay* for the care provided.   *Temple Univ. Hosp., Inc. v. City
of Philadelphia*, 2006 WL 51206, at *2 (Pa. Com. Pl. Jan. 3, 2006) (noting that the
parties had identified no "Pennsylvania authority which imposes upon the City the
obligation to pay the costs of medical treatment rendered to pre-arraignment
detainees").   Significantly, the court held that if the City *had* been obliged to pay for
the patient's emergency care — as United is here — then the City *would be liable* to
the emergency care providers for the care provided.   *Id.* (holding that "the City is not
responsible for these medical costs" in the "absence of any statute obligating the
City to pay the medical bills of the pre-arraignment detainees").

the precise "moment of formation need [to] be precisely pinpointed." *Oxner*, 132 F.

Supp. 3d at 649 (citation omitted).

Finally, United's contention that an implied-in-fact contract is unenforceable

unless the parties agreed to a specific reimbursement rate is also not a correct

statement of the law.  Pennsylvania law is clear that in the absence of an agreement

as to a specific price of services rendered, "a promise to pay the ***reasonable value***

of the service is ***implied***."  *Id.* (emphasis added);[22] *see also Temple*, 832 A.2d at 508

("Where, as here, there is no express agreement to pay, the law implies a promise to

pay a reasonable fee for a health provider's services."); *Husik v. Lever*, 95 Pa. Super.

258, 260 (1929) ("In the absence of an express agreement as to amount, the law

implies a promise to pay for a physician's services as much as they are reasonably

worth."); *Eagle v. Snyder*, 604 A.2d 253, 255 (Pa. Super. 1992) (reaffirming that

"*Husik* remains the law").

---

[22] For similar reasons, United's argument that the Parties' failed attempt to negotiate a network agreement "foreclose[es] any argument that there was mutual agreement," because "the parties could not agree on rates" (Def. Mem. at 20), misses the mark. Plaintiffs expressly plead that, for the entire period in which they have been out-of-network, the Parties have been subject to an implicit, mutually agreed-upon arrangement whereby United would compensate Plaintiffs at reasonable rates for the care rendered by Plaintiffs to United's members.  Compl. ¶¶ 190, 191, 196.  The network negotiations were an attempt to replace this pre-existing implied contract with a new express contract.  But their failure does not render the implied contract ineffective or not legally binding on United under Pennsylvania law.

**VI.  Plaintiffs' Declaratory Judgment Count Is Not Duplicative of Plaintiffs' Other Claims.**

Finally, United argues that Plaintiffs' claim for declaratory relief should be dismissed as purportedly duplicative of their other claims.  Not so.  Count V of Plaintiffs' Complaint seeks prospective and retrospective declaratory relief confirming the scope of United's future and past payment obligations for the out-of-network emergency services Plaintiffs render and rendered to United's Members. *See* Compl. ¶¶ 218, 221-23; Compl., Relief Requested ¶ 3.  By contrast, under Plaintiffs' RICO and state law claims (Counts I-IV), Plaintiffs seek monetary relief consisting of compensatory damages, treble damages, attorneys' fees, and/or interest. *See* Compl. ¶¶ 174-216; Compl., Relief Requested ¶¶ 1-2.  If Plaintiffs were to proceed to trial and obtain a favorable jury verdict on their RICO and state law claims alone, Plaintiffs would be unlikely to obtain any relief of a prospective or declaratory nature as requested in the declaratory judgment count.  As such, the causes of action are not duplicative and there is no basis to dismiss the declaratory judgment count.

## CONCLUSION

Accordingly, the Court should deny Defendants' Motion to Dismiss in its entirety.  Plaintiffs respectfully request the opportunity to amend the Complaint should the Motion to Dismiss be granted in any respect.

Dated: November 25, 2019                Respectfully submitted,


                                        */s/Bridget E. Montgomery*
                                        Bridget E. Montgomery, PA Bar # 56105
                                        Eckert Seamans Cherin & Mellott, LLC
                                        213 Market St., 8th Floor
                                        Harrisburg, PA  17101
                                        (717) 237-6054
                                        bmontgomery@eckertseamans.com

                                        Alan D. Lash
                                        FL Bar #510904 (*pro hac vice*)
                                        Justin C. Fineberg
                                        FL Bar #0053716 (*pro hac vice*)
                                        Lash & Goldberg LLP
                                        100 S.E. 2nd Street, Suite 1200
                                        Miami Tower
                                        Miami, FL  33131
                                        (305) 347-4040
                                        alash@lashgoldberg.com
                                        jfineberg@lashgoldberg.com

                                        *Counsel for Plaintiffs Emergency Care*
                                        *Services of Pennsylvania, P.C. and*
                                        *Emergency Physician Associates of*
                                        *Pennsylvania, P.C.*

## <u>CERTIFICATE OF SERVICE</u>

I, Bridget E. Montgomery, hereby certify that on November 25, 2019, I

served the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION

TO DISMISS THE COMPLAINT upon all counsel of record via this Court's

CM/ECF system, which services satisfies the requirements of the Federal Rules of

Civil Procedure.

*/s/ Bridget E. Montgomery*
Bridget E. Montgomery, Esquire

*Counsel for Plaintiffs, Emergency Care
Services of Pennsylvania, P.C. and
Emergency Physician Associates of
Pennsylvania, P.C.*